WILLIAM W. DE FOREST, GEORGE F. THOMAS, AND ROBERT
W. RODMAN, PLAINTIFFS IN ERROR, *v.* CORNELIUS W. LAW-
RENCE, LATE COLLECTOR OF NEW YORK.

The tariff law of 1846, passed on the 30th of July, (9 Stat. at Large, 42,) contains
no special mention of imported sheepskins, dried with the wool remaining on them.
They must be regarded as a non-enumerated article, and charged, with a duty of
twenty per cent. *ad valorem.*

THIS case was brought up, by writ of error, from the Circuit
Court of the United States for the Southern District of New
York.

The plaintiffs in error, W. W. De Forest & Co. sued the col-
lector to recover back money paid under protest, for duties on
importations into New York, in the years 1847 and 1848, from
Buenos Ayres, invoiced as sheepskins, having the wool on
them.

The collector (under instructions from the Secretary of the
Treasury) demanded and received a duty of thirty per cent. *ad
valorem* on the wool upon the sheepskins, and a duty of five
per cent. *ad valorem* upon the pelts.

| | | |
|---|---:|---:|
| The wool upon the skins was appraised at, . . | | $18,596.52 |
| Duty thereon at thirty per cent., | 5,578.95 | |
| Skins without the wool, . . . . . | | . 9,972.14 |
| Duty thereon at five per cent., . | 498.60 | |
| Total valuation of wool and skins, . . . | | $28,568.66, |
| Total duty, | $6,077.55 | |

Whilst the collector thus charged one duty upon the skin and
another upon the wool, the importers claimed to enter the arti-
cles at a duty of five per cent. upon the whole, and the court
decided that the proper duty to be charged was twenty per cent.
upon the entire valuation.

The cause of this great difference of opinion was as follows:
By the act of 19th May, 1828, (4 Stat. at Large, 271, chap.
55, sect. 2, first paragraph,) a duty is imposed on wool un-
manufactured: "And all wool imported on the skin shall be
estimated as to weight and value, and shall pay the same rate
of duty, as other imported wool."

By the act of July 14, 1832, (same vol. chap. 227, sect. 2, first
paragraph, p. 584,) wool unmanufactured is charged with duty:
"Provided, that wool imported on the skin shall be estimated, as
to weight and value, as other wool."

By the act of 30th August, 1842, (5 Stat. at Large, chap. 270,

De Forest et al. v. Lawrence.

sect. 1, paragraph first, p. 548,) a duty on wool unmanufactured is imposed: "Provided, also, that wool imported on the skin shall be estimated, as to weight and value, as other wool."

In the 5th sect. and sixth paragraph of that same act, of 1842, (p. 554,) duties are imposed " on sheepskins, tanned and dressed, or skivers, two dollars per dozen; on goat or sheepskins, tanned and not dressed, one dollar per dozen; on all kid and lambskins, tanned and not dressed, seventy-five cents per dozen; and on skins tanned and dressed, otherwise than in color, to wit, fawn, kid, and lamb, usually known as chamois, one dollar per dozen; . . . on raw hides of all kinds, whether dried or salted, five per cent. *ad valorem;* on all skins pickled and in casks, not specified, twenty per cent. *ad valorem.*"

Subsequently to these three statutes, so mentioning and distinguishing those three several classes of imports, came the statute of 30th July, 1846, (9 Stat. at Large, (Little & Brown,) chap. 74, p. 42,) entitled " An act reducing the duties on imports, and for other purposes."

The first section enacted, that, from and after the first day of December then next, "in lieu of the duties heretofore imposed by law, on the articles hereinafter mentioned, and on such as may be now exempt from duty, there shall be collected, levied, and paid, on the goods, wares, and merchandise, herein enumerated and provided for, imported from foreign countries, the following rates of duty." Then follows the enumeration of various articles, subject to various duties, in schedules from A to H, ranging from duties of one hundred per centum to five per centum *ad valorem.*

Section 2 enacts that the goods "mentioned in schedule I, shall be exempt from duty."

Section 3 imposes on all goods, wares, and merchandise imported from foreign countries, "and not specially provided for in this act, a duty of twenty per centum *ad valorem.*"

In schedule C, of articles subject to thirty per cent. *ad valorem,* "wool unmanufactured" is mentioned, but "wool imported upon the skin" is not specially provided for therein. In schedule H, among other articles subject to the duty of five per cent. *ad valorem,* "raw hides and skins of all kinds, whether dried, salted, or pickled," are mentioned; but "wool imported on the skin" is not therein mentioned. In schedule I, of articles exempt from duty, wool imported on the skin, is not mentioned; neither is it mentioned in any one of the schedules, from A to I inclusive.

On the trial of the case in the Circuit Court, Mr. Justice Nelson instructed the jury that the article came most appropriately within the schedule of non-enumerated articles, and as such was chargeable with a duty of twenty per cent.

To which charge the counsel for the plaintiffs excepted, on the ground that the court should have charged the jury that the article imported by the plaintiffs, raw sheepskins dried, fell under schedule H, of the Tariff of 1846, and was not a non-enumerated article, but on the contrary, was enumerated under said schedule H, and was liable only to a duty of five per cent., and not to a duty of 20 per cent. That the said article being a raw skin dried, and being not otherwise specifically provided for in said act, was liable only to the same rate of duty as all other raw skins dried. And the counsel for the said plaintiffs requested the court to charge the said jury accordingly, which request was refused by the court, and the counsel for the plaintiffs thereupon excepted.

Upon this exception, the cause came up to this court, and was argued by *Mr. Schley,* for the plaintiffs in error, and by *Mr. Crittenden,* (Attorney-General,) for the defendant.

The points for the plaintiffs in error were the following:
I. The Tariff of 1846 provides,
1. For such articles of import as are " specially enumerated," as liable to certain rates of duty.
2. Such as are " exempt " from duty; and
3. Such as are not " specially provided for in this act," but, as non-enumerated articles, are made subject generally to a duty of twenty per cent. *ad valorem.*
II. If an article is not " specially enumerated," or " exempt," it must fall under the third class of " non-enumerated " articles.
This act, therefore, provides for every possible article of import, and whether any duty is leviable, and if so, at what rate, is to be tested by this act alone.
III. The terms " skins " and " hides " are general descriptions or denominations of certain classes of articles, known by that name both as natural products and as articles of merchandise and commerce.
It is to be presumed that Congress used and intended them to be understood as they are ordinarily used and understood. The " skin " or the " hide," the covering of the flesh of animals, as a composite article, has parts: the fleece and the pelt. When the general term is used, the parts are included; as in speaking of the head, we include the eyes or the hair.
IV. If the article is to be removed from its natural and commercial classification, be broken up, and one part be artificially classed as wool, or hair, or fur, this can only be done by express provision. Such an instance of separation appears in schedule G, where "furs undressed, when on the skin," are made liable to a duty of ten per cent.

V. " Wool " and " hair " are used to designate a certain portion of the covering of the animal after it is shorn, clipped, or cut off the skin ; until clipped or cut they are a part of the skin. A contract for wool would not justify a delivery of sheepskins ; nor a contract for sheepskins, a delivery either of wool, or of a pelt shorn of the wool.

VI. " Wool unmanufactured," mentioned in schedule C, and " hair of all kinds, uncleaned and unmanufactured," mentioned in schedule G, refer to wool and hair, clipped or cut, and not to the skin or hide with the wool or hair on, in its natural state. When the skin or hide is shorn, one part is denominated wool or hair, and the remainder is no longer termed a " skin," but a " pelt."

VII. Thus as " hair " pays a duty of ten per cent., but the skin with the hair on, only a duty of five per cent., in the case of a deerskin ; so in the case of a sheepskin, while the " wool " pays a duty of thirty per cent., the skin with the wool on should pay only a duty of five per cent.

VIII. The terms " skins " and " hides " are generic, and include all kinds of skins and hides. Schedule H, embodies this idea in words, " hides and skins of all kinds," and intends the hide or skin of every animal, deer, sheep, calf, horse, &c. Though all these are known in trade as *hides and skins,* yet *to* distinguish them, the denominations of deerskins, sheepskins, calfskins, horsehides, &c., are appropriately used. To say that because one kind of skins is called " sheepskins," and another " deerskins," &c., they are by such distinctive terms, removed from the general class designated in schedule H, " hides and skins of all kinds," would be to destroy the class entirely ; for one after another, every kind of hide and skin could be thus removed until no kind would be left. If, because a particular skin is called in commerce a sheepskin, it is removed from the genus " skin," by the same argument Saxony wool, or Smyrna wool, would not be comprised under " wool unmanufactured ; " nor camwood or fustic, under " dye woods," in schedule H ; nor horsehair under " hair of all kinds," nor beaver fur under " furs," nor emeralds under " precious stones," in schedule G, &c.

It is obvious that such a rule of construction would destroy the tariff. Does a stone cease to be a precious stone because it is called an emerald ? or a skin cease to be a skin because it is called a sheepskin ?

IX. If schedule H, then, merely described " hides and skins of all kinds," a sheepskin would be comprised under it as appropriately as any other kind of skin.

X. But schedule H requires that the " hide or skin " should be " raw," that is, unmanufactured or undressed, in order to

De Forest et al. *v.* Lawrence.

bring it under that schedule. The article in question in this case, was "raw." Again, schedule H requires that it should be "dried," "salted," or "pickled," (various ways of preserving the skins.) The article in question was "dried."

XI. The Buenos Ayres sheepskins imported by the plaintiffs were "raw skins, dried," and as such, were articles enumerated in schedule H, and liable only to a duty of five per cent.

In the argument of these points, the counsel referred to the following authorities: 1 Sumner, C. C. Rep. 166; 1 Story's C. C. Rep. 341, 560, 610; 2 Id. 374; 8 Peters, 277; 10 Id. 137; 3 How. 106; 7 Id. 786; 1 Excheq. R. 281; Hume's Laws of the Customs, 284, 287.

*Mr. Crittenden.* The importation must fall within the class of articles embraced in the third section of the act of 1846, as not specially otherwise provided for, and thereby be subjected to a duty of twenty per cent. *ad valorem.*

" Wool, imported on the skin," was, by the act of 1828, subjected to a specific duty of four cents per pound, and also in addition to an *ad valorem* duty of forty per cent.; and also increasing annually by five per cent, until the *ad valorem* duty amounted to fifty per centum; by the act of 1832, it was subjected to a specific duty of four cents per pound, with the addition of an *ad valorem* duty of forty per cent.; and by the act of 1842, it was subjected to a specific duty of three cents per pound, with the additional duty of thirty per centum *ad valorem.* So stood the revenue laws in the statute books when the revenue act of 30th July, 1846, was framed, and under consideration, and passed. It is not reasonable to suppose that "wool imported on the skin," an article of foreign importation, which had been, *eo nomine*, so long distinguished from "raw hides and skins," by different descriptions, and by different rates of d imposed on them, respectively, were, by the act of 1846, confounded and subjected to one and the same rate of duty, under one and the same name.

By the well-established rules of construing statutes, " if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them." Where there are different statutes in *pari materia*, though made at different times, or even expired, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other. Rex *v.* Loxdale and others, 1 Burr. 447; 4 Bac. Abr. Statute (I.) 3, 646; The King *v.* Mason, 2 Term R. 586; Allesbury *v.* Pattison, Douglas, 30; 1 Black. Comm. 60, and Tucker's note, 3; Dwarris on Statutes, 700.

· The revenue laws of the United States are all to be taken together as one system, one statute as explanatory of another. The revenue act of 30th July, 1846, has reference expressly to the former law for imposing duties and for exempting articles from duties.

· In accordance with the established rules for construing statutes, " wool, imported on the skin," so noticed as an article of commerce, and as such subjected to duty, in acts of 1828, 1832, and 1842, cannot be lost sight of in constructing the act of 30th July, 1846; that article of commerce not being otherwise specially provided for in any of the schedules, from A to I inclusive, must, of course, come under the general provision of the third section, which imposes the duty of twenty per cent. *ad valorem* upon all goods imported from abroad, not otherwise specially provided for in the act.

After the distinctions so clearly drawn, in the revenue law of 1842, between sheepskins, imported with the wool on the skin, and raw hides and skins, dried, salted, or pickled, a construction of the act of 1846, would be preposterous and in violation of the established rules, which should obliterate that distinction, force sheepskins imported with the wool on the skin into the denomination of raw hides, to be subjected to the same rate of duty as if they had been imported divested of the wool.

The evidence adduced by the plaintiffs established, without doubt, that the sheepskins were imported with the wool on the skin. The law applicable to the fact made the importations liable to the rate of duty provided in the third section of the act of 1846.

The opinions of the witnesses introduced by the plaintiffs, that sheepskins, imported with the wool on the skin, dried, as it came from the body of the sheep, may be comprehended under the denomination of raw hides and skins dried, cannot change the law, can have no legal effect to alter the construction of the statutes. It is the province of the witness to testify as to fact; it is the province of the judge to pronounce the law applicable to the fact.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the Southern District of the State of New York.

The action was brought by the plaintiffs against the defendant, the late collector of the port of New York, to recover back an excess of duties paid under protest on an article imported from Buenos Ayres, described in the invoices and entries as " sheepskins." The importations were under the tariff act of 1846. The article was imported with the wool on the skins, and by the in-

structions of the Secretary of the Treasury, the collector was directed to cause the wool to be estimated and appraised, and to be charged with a duty of thirty per cent. *ad valorem* under schedule C, and five per cent. on the skin, under schedule H. The plaintiffs claim that no more than a duty of five per cent. *ad valorem* should be charged upon the entire article. It is usually described, in the invoices, and shipped as sheepskins, and known in trade and commerce by that designation. The skin is in the same condition as when taken from the animal, except it is dried. It is not dressed.

The court below charged the jury, that the article came within neither of the schedules mentioned, but was more properly a non-enumerated article, and chargeable with a duty of twenty per cent. *ad valorem.* And judgment was rendered in the case accordingly.

By the act of May 19, 1828, (4 Stat. at Large, 271, sect. 2,) a duty is charged upon wool imported on the skin; and direction is given to estimate it as to weight and value, and impose the same duty as on other imported wool.

A similar provision is found in the act of July 14, 1832, (Id. 584, sect. 2,) and also, in the act of August 30, 1842, (5 Id. 548.)

The article is not enumerated according to its previous designation in the revenue laws in the act of July 30, 1846, (Sess. Laws, 68,) and, of course, no duty is specifically charged upon it in that act as in the previous acts. But it is claimed, on the part of the plaintiffs, that it falls within the description under schedule H, "raw hides, and skins of all kinds, whether dried, salted, or pickled, not otherwise provided for," and which are chargeable only with a duty of five per cent. *ad valorem.*

This description was obviously taken from the act of 1842, (sect. 5, para. 6,) "on raw hides of all kinds, whether dried or salted, five per cent. *ad valorem ;* on all skins pickled, and in casks, not specified, twenty per cent. *ad valorem.*"

The only difference between this act, and the present one is, that the two classes, "raw hides," and "skins," are now ranged in one class, and the duty of five per cent. charged upon each. "Skins pickled," are classed with "raw hides dried or salted," which latter article, it is well known, is extensively imported into the country for the purpose of being manufactured into leather, and the duty is fixed at a low rate for the encouragement of the manufacturer.

In this same act of 1842, it will be remembered, sheepskins, imported with the wool on, were charged with a specific duty, the same as unmanufactured wool, thus distinguishing the article from skins pickled, referred to in the 6th paragraph of the 5th sect. of that act.

We have no doubt, from the association of skins with raw hides in the act of 1846, in connection with the description, and classification in the act of 1842, that they should be regarded as an article imported, like raw hides, for the purpose of being manufactured; and, by no reasonable construction, can be regarded as descriptive of the article in question.

The argument is quite as strong, and we think stronger, in favor of ranging the article under the clause in schedule E: " skins of all kinds, not otherwise provided for," and which is chargeable with a duty of twenty per cent. *ad valorem.*

Neither do we think that the article can be separated, and a duty charged separately upon the estimated quantity of the wool, and upon the skin, according to the rate chargeable upon each. This would be the introduction of a principle in the construction of the revenue acts heretofore unknown, and which has no countenance in the provisions of the acts themselves.

The 20th section of the act of 1842 looks to the component parts of a manufactured article of two or more materials in fixing the duty; but does not separate it, and charge the duty on each part according to the class to which it belongs. It assesses the duty on the entire article at the highest rate at which any of the component parts might be charged.

It is difficult also to say to what length this principle, if admitted, must be carried in construing these acts. It could not, consistently, be limited to the article in question; for, while skins, dried, are charged only with the duty of five per cent. *ad valorem,* " hair of all kinds " is chargeable with a duty of ten per cent.; and the same rule of construction that would separate the sheepskin, and charge a duty separately on the wool, and on the skin, would require the deerskin, with the hair on, to be separated, and the duty to be levied on each part. And so, in respect to every other skin dried, salted, or pickled, imported with the hair on.

It is true, that in the acts of 1828, 1832, and 1842, in each of which a specific duty was charged upon the wool imported on sheepskins, the appraisers were directed to estimate the weight and value, for the purpose of assessing the duty. But the article was not divided, as no separate duty was assessed upon the skin by either of these acts. The act of 1842 assessed a duty upon " skins pickled and in casks," but skins imported with the wool on, when separated from the wool, would not fall within this description. The whole duty, therefore, that could be properly assessed upon the article was assessed upon the estimated quantity of wool imported upon it.

The article has never been classed in any of the tariff acts under the designation of skins; but has been charged always,

since it came under the notice of these acts, with a specific duty. It has been thus charged, since the act of 1828, down to the present act, a period of some eighteen years. And, although it has been invoiced, and is known in trade and commerce, by the designation of sheepskin raw, and dried, and may, generally speaking, be properly ranged under the denomination of skins, as a class; yet, having a known designation in the revenue acts, distinct from the general class to which it might otherwise be assigned, we must regard the article in the light in which it is viewed by these acts, rather than in trade and commerce. For, when Congress, in legislating on the subject of duties, has described an article so as to identify it by a given designation for revenue purposes, and this has been so long continued as to impress on it a particular designation as an article of import, then it must be treated as a distinct article, whether there be evidence that it is so known in commerce or not. It must be taken as thus known in the sense of the revenue laws, by reason of the legal designation given to it, and by which it has been known and practised on at the custom-house.

It is but fair to presume, after having been treated by the law-makers for a considerable length of time as an article known by this designation, with a view to the assessment of the rate of duty upon it, that, if intended to be charged specifically, or by enumeration, the designation by which it was known to them would have been used, instead of the one known to trade and commerce, if that should be different.

The 3d section of the act of 1846, enacts, that on all goods, wares, and merchandise not specifically provided for in the act, a duty of twenty per cent. *ad valorem* shall be charged.

Under the foregoing view of the law of the case, sheepskins, imported with the wool on, must be regarded as a non-enumerated article, and fall within this third section.

The probability is, that the enumeration was omitted from an oversight, else the article would have been chargeable with a duty in the way provided for in the act of 1842. But, having been omitted, and not specifically provided for, it necessarily comes within the section mentioned, and subject to a duty of twenty per cent. *ad valorem.*

We are of opinion, therefore, the judgment of the court below was right, and should be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of New York, and was argued by counsel,

on consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed with costs and damages, at the rate of six per cent. per annum.