## *In re* BLUMENTHAL *et al.*

*(Circuit Court, S. D. New York.  January 7, 1892.)*

CUSTOMS DUTIES—CLASSIFICATION—COLORED PENCILS—SCHOOL CRAYONS.
  Pencils of wood from four to seven inches in length, filled with material of various colors, and known in trade and commerce as "colored pencils," and often, especially since March 3, 1883, as "school crayons," are dutiable under Schedule N of the tariff act of March 3, 1883, (Tariff Ind., New, 473,) as "pencils of wood filled with lead or other material," at 50 cents per gross, and 30 per cent. *ad valorem,* and not, under the same schedule, (Tariff Ind., New, 423,) as "crayons of all kinds," at 20 per cent. *ad valorem.*

At Law. Application by the importers, Blumenthal & Boas, under the provisions of section 15 of the act of June 10, 1890, entitled "An act to simplify the laws in relation to the collection of the revenues," for a review by the United States circuit court of the decision of the board of United States general appraisers at the port of New York, affirming the decision of the collector of said port in the classification for duty of certain merchandise entered by the said importers in July, 1890, which was classified by the collector as "lead-pencils," and duty assessed thereon at the rate of 50 cents per gross and 30 per cent. *ad valorem,* under the provisions of Schedule N, tariff act of March 3, 1883, (Tariff Ind., New, 473.) The importers duly protested, claiming that the merchandise was "crayons," and dutiable only at 20 per cent. *ad valorem,* under Schedule N of said tariff act, (Tariff Ind., New, 423.) The board of United States general appraisers affirmed the decision of the collector, finding, among other things, that "the articles in question are small sticks of colored composition incased in wood. They are commonly called 'colored pencils,' and are not known by the commercial designation of 'crayons.'" The importers procured an order from the circuit court under the provisions of said act of congress, requiring the board of United States general appraisers to file their return in said court, and, after filing of the

same, procured an order for the taking of further evidence in the case before one of said board of general appraisers as an officer of the court. Under this order testimony was taken on behalf of the importers, and also in behalf of the government. It was shown that the merchandise in question consisted of small pencils of wood, coming in different lengths from four to seven inches, and contained in paper boxes holding half a dozen of the little pencils each. The importers' main contention was that, at the time of the passage of the tariff act of March 3, 1883, these articles were generally known in trade and commerce in the United States as "crayons," or "school crayons," and, to sustain this proposition, they offered the testimony of numerous trade witnesses. They also proved that the articles were used chiefly by children in school for drawing or coloring of maps and engravings, and that they were also used and sold as a sort of toy. The importers also proved that several of the leading domestic manufacturers of this class of goods had made the same article to a limited extent before 1883, and very largely during the succeeding years, and described it in their catalogues and upon the paper boxes as "school crayons." On behalf of the government, testimony was introduced showing that the articles were manufactured, as were all other colored pencils, from wood which was cut into the proper lengths, rounded and smoothed, divided in halves, grooved and filled with a colored composition composed of coloring matter, kaolin, and some fatty substance; that the halves were then glued together, and the article was polished and put up for the market; that all colored pencils were made in this way, with differences in the grade of the coloring matter which was used and in the finish of the goods. A number of trade witnesses were also produced by the government, who testified that they had known the article in question in March, 1883, and prior to that date, by the name of "colored pencils," and that they were bought and sold in the trade at that time and since by that designation. Several of the witnesses admitted that during the past four or five years these articles were sometimes called for and known in trade as "school crayons," but that their general designation was "colored pencils." Testimony was also produced by the government showing that at the time of the passage of the tariff act of March 3, 1883, there was a well-known article in trade which went by the name of "crayons," and that it was composed of chalky material, coming in different sizes, shapes, and colors, generally without covering, sometimes covered with paper, and occasionally enameled, and that such an article was the one commonly known in trade at that time as "crayons," and not the article in suit.

*Hartley & Coleman*, for importers.

*Edward Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty.

WHEELER, District Judge. The tariff act of 1883, Schedule N, "Sundries," 423, laid a duty on "crayons of all kinds," and 473 a higher duty on "pencils of wood filled with lead or other material." The articles in question are pencils of wood filled with crayon material, and are,

in the trade, now sometimes called "crayons. This higher duty is laid upon these specific things particularly described. The nature of them is not changed, and they none the less remain these specific things by being sometimes, or even generally, called something else. If these are wood pencils, filled with crayon material, they are none the less pencils of wood filled, and dutiable as such. This is in accordance with the cases of *Arthur* v. *Lahey*, 96 U. S. 112; *De Forest* v. *Lawrence*, 13 How. 274; *Maillard* v. *Lawrence*, 16 How. 261; *Robertson* v. *Perkins*, 129 U. S. 233, 9 Sup. Ct. Rep. 279; and *Robertson* v. *Glendenning*, 132 U. S. 158, 10 Sup. Ct. Rep. 44. In each of these cases there was a specific description which left no room for trade names. They decide that where an act of congress lays right hold of a thing, and says that that particular thing shall have a duty upon it thus and so, when it is that thing the duty cannot be got rid of by calling it something else, or giving it some other name. Looking at this evidence carefully, it does not appear to me clear that they have got to calling these things so universally "crayons" that we can say, as matter of fact, that the trade name is "crayon," but generally they are known as "pencils." Much less were they known as "crayons" in 1883, at the passage of this act. As they are filled with crayon material, there is some propriety in using the name "crayon;" but if they are of wood, and filled with that or other material, they would still be pencils of wood, although the wood, without any material, would not be a pencil. The decision of the board of United States general appraisers is affirmed.