## BRENNAN v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. April 12, 1905.)

No. 546.

1. CUSTOMS DUTIES—CLASSIFICATION—LIMES IN BRINE.

Limes in brine *held* not to be dutiable as "limes" under Tariff Act July 24, 1897, c. 11, § 1, Schedule G, par. 266, 30 Stat. 172 [U. S. Comp. St. 1901, p. 1651], but to be free of duty under section 2, Free List, par. 556, of said act, 30 Stat. 198 [U. S. Comp. St. 1901, p. 1683], as "fruits in brine, not specially provided for."

2. SAME—SPECIFIC ENUMERATION—DESIGNATION BY CLASS.

Under some circumstances language describing a class may be more specific than that containing a designation eo nomine, and an article literally included within such a designation in one paragraph of the customs laws may, on account of its relations to a peculiar class, be referred to some other paragraph.

3. SAME—IMPLIED STATUTORY DEFINITIONS.

Wherever in the history of customs laws it is found that a certain expression has received, in effect, a statutory construction, or a long and uniform use by Congress or by the departments, that construction is controlling, unless some other is necessary. This rule is of the highest authority, and masters all others.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

The decision below (129 Fed. 837, T. D. 25,274), affirmed a decision of the Board of General Appraisers (G. A. 5,307, T. D. 24,-320), which had affirmed the assessment of duty by the collector of customs at the port of Boston on merchandise imported by William F. Brennan.

William A. Keener (J. Stuart Tompkins, on the brief), for appellant.

William H. Garland, Asst. U. S. Atty.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, J.  This is an appeal from the Circuit Court for the District of Massachusetts, involving the question of the proper classification of "limes in brine" under the customs act approved July 24, 1897, c. 11, § 1, Schedule G, 30 Stat. 172 [U. S. Comp. St. 1901, p. 1651].  Duty was assessed under paragraph 266, as follows:

"266. Oranges, lemons, limes, grape fruit, shaddocks, or pomelos, one cent per pound."

This classification was sustained by the Board of General Appraisers.  Thereupon the importer petitioned the Circuit Court as provided by law.  He made alternative claims that the importation should have been classified as "fruits in brine," in accordance with paragraph 559 (chapter 11, § 2, Free List, 30 Stat. 198 [U. S. Comp. St. 1901, p. 1683]), forming a part of the free list, or else in accordance with paragraph 241 (chapter 11, § 1, Schedule G, 30 Stat. 170 [U. S. Comp. St. 1901, 1649]).  It is so clear that the latter does not now touch this topic that we do not find it necessary to quote it.  In estimating the dutiable weight under paragraph 266 the brine was included.  Whether the brine should be so included is in issue; but, of course, this becomes unimportant if the importation should have been classified under the free list.

It is contended by the United States that under the well-known rule that articles are not dutiable under general terms when a duty is imposed in specific language, all limes are dutiable under paragraph 266, because specifically named therein, while not specifically named in paragraph 559; and that this is true particularly in view of the expression in the latter paragraph, "not specially provided for in this act."  On the other hand, it is contended by the importer that this rule does not apply, because, under the other well-known rule, which frequently requires customs statutes to be construed in the light of mercantile designations, the single word "limes" does not commercially include "limes in brine."  The Circuit Court found in favor of the contention of the United States.

The record contains evidence from importers that commercially limes are fruits.  The vocabularies agree with this testimony.  It also appears that fresh limes are imported to a considerable extent, and are used almost exclusively, if not exclusively, for concocting "drinks," to adopt the expression found in the record.  The evidence also shows, and as to this there is no dispute, that the submerging of fresh limes in brine results in a physical change to such an extent that, while limes, before being thus submerged, are not edible, they are afterwards in large demand as edibles in the New England States.  The record lacks scientific evidence whether the change produced by the brine is anything more than what is described in the case as physical.  At any rate, the change is so substantial that fresh limes and limes in brine cannot be used one

for the other, and each is applied to its own special use, quite the same as though each had been originally a different product.

The record also shows by uncontradicted evidence that the expressions "limes in brine" and "pickled limes" are, in mercantile uses, synonymous and interchangeable, and that there has always been in -trade a distinction between limes and limes in brine to the extent that, if one asked a merchant for limes, he would be given fresh limes. It also appears that limes in brine have a uniform and standard price, varying only within very small margins, while fresh limes vary from $15 to $20 per barrel of flour-barrel size, according to the varying demand and supply.

Since this case was decided by the Circuit Court on April 23, 1904, the Circuit Court of Appeals for the Second Circuit, on January 4, 1905, in United States v. Reiss, 136 Fed. 741, passed down an opinion disposing of sundry paragraphs of the same statute in relation to figs, which run on apparently parallel lines with the two paragraphs in question here. There the United States invoked the same rules of law invoked by the importer on this appeal, and the decision was in their favor. Paragraph 263 of the act before us reads as follows:

"263. Comfits, sweetmeats, and fruits preserved in sugar, molasses, spirits, or in their own juices, not specially provided for in this act, one cent per pound and thirty-five per centum ad valorem." 30 Stat. 171 [U. S. Comp. St. 1901, p. 1651].

Paragraph 264 reads as follows:

"264. Figs, plums, prunes and prunelles, two cents per pound; raisins and other dried grapes, two and one half cents per pound; dates, one half of one cent per pound; currants, Zante or other, two cents per pound; olives, green or prepared, in bottles, jars, or similar packages, twenty-five cents per gallon; in casks, or otherwise than in bottles, jars, or similar packages, fifteen cents per gallon."

In paragraph 264 figs are specified, so far as we can perceive, in exactly the same way, and subject to the same rules of construction, as limes in paragraph 266; while paragraph 263 fails to expressly name figs, using the word "fruits," as does paragraph 559; and also in the same way it uses the expression "not specially provided for in this act." The opinion of the Circuit Court of Appeals observes as follows:

"The Circuit Judge determined the question as to the relative specificness of the two paragraphs by the consideration that paragraph 263 in terms excluded from its provisions fruits preserved, etc., not specially provided for, whereas paragraph 264 contains no such excepting clause."

It also observes:

"We are satisfied that fruits preserved in sugar, in spirits, in juice, etc., are known commercially as a class by themselves, the various fruits which that class includes being prepared for the particular use and put up in the particular form, which use and form constitute the distinctive characteristics of the category for which those fruits are prepared. Upon that class, as a class well known commercially, Congress has imposed duty by paragraph 263."

This is a very just and pertinent application of the common rule of the commercial interpretation of statutes relative to customs

duties, and it has direct application to the case at bar. Paralleling what was there said, "limes in brine" have "the distinctive characteristics" of a special category of merchandise to which fresh limes and other fresh fruits have no strict relation; and there is a strong presumption that the whole category or class is to be treated for all commercial purposes, including customs duties, by uniform rules. It is difficult to conceive any reasonable support for the proposition that some fruits submerged in brine, and thus substantially changed, are in a different category from others.

Fink v. United States, 170 U. S. 584, 587, 18 Sup. Ct. 770, 42 L. Ed. 1153, supports the underlying observations made in the case last cited, in that muriate of cocaine, although a salt, was held not to be classified under a paragraph of the customs statute which specifically included salts; but, on the other hand, as a medicinal preparation, it was held to fall into a class with other medicinal preparations. So, in Magone v. Heller, 150 U. S. 70, 14 Sup. Ct. 18, 37 L. Ed. 1001, it was held that, although a specific duty was laid on sulphate of potash eo nomine, a certain kind of sulphate of potash, the only common use of which was for manure, was free under a paragraph exempting from duty all substances "expressly used for manure." This case was used for illustration in Chew Hing Lung v. Wise, 176 U. S. 156, 161, 20 Sup. Ct. 320, 44 L. Ed. 412. Such decisions tend more or less to sustain the proposition that, notwithstanding an article may be literally included within a designation eo nomine contained in a certain paragraph of the customs laws, yet, on account of its relations to a peculiar class, it should be referred to some other paragraph. Therefore it is that sometimes the ordinary rule that articles are not dutiable under general terms when a duty is imposed in specific language leaves it to be determined what is specific language, and whether it is that which contains a designation eo nomine or that which describes a class. Evidently, language referring to the latter may be, under some circumstances, the more specific; and such apparently is the case at bar.

However, notwithstanding the great weight given in customs cases to the two rules of interpretation, which, as we have said, are relied on on the one side by the United States, and on the other by the importer, there is another rule which masters them both. Wherever, in the history of customs laws, it is found that a certain expression has received, in effect, a statutory construction, or a long and uniform use by Congress or by the departments, that construction is controlling, unless some other is necessary. The rule as to implied statutory definition of expressions in customs acts was fully stated as follows in De Forest v. Lawrence, 13 How. 274, 281, 282, 14 L. Ed. 143.:

"The article has never been classed in any of the tariff acts under the designation of skins, but has been charged always, since it came under the notice of these acts, with a specific duty. It has been thus charged since the act of 1828 (4 Stat. 271) down to the present act, a period of some eighteen years. And although it has been invoiced and is known in trade and commerce by the designation of sheepskin, raw and dried, and may, generally speaking, be properly ranged under the denomination of skins as a class, yet, having a

known designation in the revenue acts, distinct from the general class to which it might otherwise be assigned, we must regard the article in the light in which it is viewed by these acts, rather than in trade and commerce. For when Congress, in legislating on the subject of duties, has described an article so as to identify it by a given designation for revenue purposes, and this has been so long continued as to impress on it a particular designation as an article of import, then it must be treated as a distinct article, whether there be evidence that it is so known in commerce or not. It must be taken as thus known in the sense of the revenue laws, by reason of the legal designation given to it, and by which it has been known and practiced on at the custom house."

This rule has been ever since recognized by the Supreme Court; but, as it was so fully stated in De Forest v. Lawrence, we need refer only in a brief manner to some subsequent decisions. In Homer v. The Collector, 1 Wall. 486, 490, 17 L. Ed. 688, Mr. Justice Nelson, speaking in behalf of the court, referred to the fact that evidence was offered to show the commercial sense of the word in question, but said:

"But this inquiry had nothing to do with the question, and, indeed, it is difficult to see how any such inquiry could take place except as matter of curiosity and speculation; for certainly such proof could not exist or be found in the sense of commercial usage under any of the tariff acts, as a duty has been imposed on almonds eo nomine almost immemorially, at least since the duty act of 1804, and continued in the duty acts of 1816, 1832, 1842, 1846."

Further applications or statements of the same rule appear in Saxonville Mills v. Russell, 116 U. S. 13, 21, 6 Sup. Ct. 237, 29 L. Ed. 554; The Conqueror, 166 U. S. 110, 118, 17 Sup. Ct. 510, 41 L. Ed. 937; United States v. Morrison, 179 U. S. 456, 461, 21 Sup. Ct. 195, 45 L. Ed. 275; and Benziger v. United States, 192 U. S. 38, 44 to 47, 24 Sup. Ct. 189, 48 L. Ed. 331. Numerous other cases can be found, but we have cited enough to explain the rule and to show that it has been uniformly recognized by the Supreme Court, and is thoroughly settled.

In applying this rule of construction, it is more convenient to run backwards over the customs legislation. Paragraph 216 of the act of August 18, 1894 (28 Stat. 524, c. 349) laid a duty on oranges, lemons, and limes. The context showed clearly that only fresh fruit was intended. This is the paragraph which was carried into paragraph 266 of the act under discussion, but the change in the method of assessing the duty rendered the context unnecessary. Likewise, under paragraph 301 of the act of October 1, 1890 (26 Stat. 587, c. 1244), oranges, lemons, and limes were classified eo nomine, as under the act of 1894, and, as in that act, the context indicated that only fresh fruits were intended. Under the act of 1890, however, by a treasury decision (11,555), G. A. 730, July 6, 1891, it was held that importations of citrons in brine should be classified as fruits, green or ripe. It was found as a fact, however, that the packing was not a necessary part of the process of manufacture for which they were intended, and that citrons so packed are not commercially known as pickles. The conclusion was that incidental packing in brine for the purpose of preserving from decay during transportation, being the method usually practiced,

would not so change the character of the citron as to exclude it from the denomination "fruits." The care with which the Board of General Appraisers distinguished the use for which the brine was applied in this instance fortifies the construction which we will see has been uniformly given with reference to the classification of limes in brine until lately, inasmuch as limes are immersed in brine, not merely for preservation, but to bring about a physical change which renders them edible, as we have seen.

Under Schedule G of the act of March 3, 1883 (22 Stat. 504, c. 121), oranges and lemons were clearly limited by the context to fresh fruit though limes and grapes, being in a separate paragraph, were not thus clearly limited. Under the act of July 14, 1870 (16 Stat. 265, c. 255), oranges, lemons, limes, and other like importations were classified eo nomine, without any context indicating whether or not limited to fresh fruit. By T. D. 5,190, April 10, 1882, however, limes in brine were classified, under the act of 1870, as pickles, there being no specific assessment on limes or any fruits in brine. So far as we can ascertain, including what we gathered from answers to our inquiries at bar, limes in brine have ever since been classified in accordance with that treasury decision until the issue arose under the statute now before us. The United States could easily have shown otherwise if such is not the fact. Therefore we have here a practical interpretation by the department, running for 25 years, by virtue of which limes in brine are not classified under the word "limes," used eo nomine in connection with the words "oranges" and "lemons." Moreover, Congress, as we have shown, meanwhile several times re-enacted the same form of expression, "oranges, lemons, and limes," and thus, by the well-settled rules of construction, adopted the classification of treasury decision 5,190. It is true that under the same act of 1883 the Treasury Department, by its decision of April 7, 1884 (6,290), held that unripe walnuts preserved in brine should be classified under the provision for walnuts eo nomine; but there the issue was as between walnuts eo nomine and "vegetables in salt or brine." The treasury simply held that walnuts were not vegetables, and gave the topic no further consideration. So with regard to peanuts boiled in brine, the treasury, by decision 3,240, May 16, 1877, as against the claim that they were "prepared vegetables," held that they were to be classified as "peanuts not shelled." Each of these cases seems to have been on the mere issue as between walnuts and peanuts eo nomine on the one hand and vegetables on the other, and each decision was to the effect that they were not vegetables, without further consideration.

On the other hand, under section 22 of the act of March 2, 1861 (12 Stat. 191, c. 68) and section 13 of the act of July 14, 1862 (12 Stat. 555, c. 163), S. S. 708, a letter from the treasury to the collector at New York of July 20, 1870, it was held that limes in brine should be classified as pickles. By those acts oranges, lemons, and limes were classified eo nomine, and so were pickles. 12 Stat. 188, 191, c. 68. But there was no classification eo nomine of limes in brine or fruits in brine; so that, as under treasury decision 5,190, the

question was between limes eo nomine and pickles, with the decision in favor of the latter, thus by an unmistakable ruling carrying back departmental construction 12 years further than did the treasury decision of April 10, 1882, already cited.

That we correctly understand the treasury decisions to which we refer is shown by Morgan's U. S. Tariff, 1883, page 262; also by the same work (7th Ed. 1891) page 435, and by the same (8th Ed. 1895), page 447, and by Heyl's U. S. Import Duties, 1874, part II, page 37. No suggestions of any variation from the rulings of S. S. 708 and T. D. 1,590 are made by either of those authoritative digests; nor is any such suggestion found in that very useful compilation made under the directing hand of Senator Morrill of Vermont, whose practical knowledge of these topics was unrivaled, which compilation is entitled "The Existing Tariff on Imports Into the United States, etc., and the Free List," and was published at the government printing office in 1884.

As oranges, lemons, limes, and pickles have appeared in our tariff legislation beginning with the act of August 10, 1790, c. 39, 1 Stat. 181, and ever since, while fruits in brine never appeared prior to the legislation which we have cited in reference thereto, it would avail nothing to pursue further this particular branch of this topic. Our examination demonstrates, however, that wherever Congress has used with the words "oranges, lemons, and limes," a context which enables us to determine the limitations the expression clearly covered only fresh fruit, and it also demonstrates that pending the treasury decisions in 1870 and 1882, holding that limes in brine were not to be classified under limes eo nomine, and subsequently, until the present issue arose, there has been a settled practice of the department in reference thereto, and Congress has many times reenacted the various expressions involved without discrediting the treasury interpretation thereof. All this amounts, in several aspects, to a statutory construction to the effect that the word "limes" does not include limes in brine. As we have said, this statutory construction is of the hightest authority, and masters all the other rules.

Hills v. United States, 123 Fed. 477, 59 C. C. A. 412, decided by the Circuit Court of Appeals for the Second Circuit on May 23, 1903, might perhaps be considered as holding in favor of the importer the precise issue we have before us. Apparently, the Board of General Appraisers (T. D. 24,567, G. A. 5,379, July 11, 1903) so regarded it. Nevertheless, the precise point now before us was not there made; and especially, also, as Judge Lacombe concurred in that opinion, and had previously decided in the Circuit Court in Roche v. United States, 116 Fed. 911, favorably to the United States, the present issue, while no reference thereto was made in Hills v. United States, we deemed it advisable to investigate the question de novo as we have done.

It is to be observed that the earlier treasury decisions, to which we have referred as calling for our conclusion, classified limes in brine as pickles. These were all before there was any description in any customs act of fruits in brine eo nomine. Limes in brine,

like other fruits in brine of a similar type, are, of course, a peculiar species of pickles; so that when "fruits in brine" were later named in the customs acts, limes in brine came within the general rule relied on by the District Court, and so well understood, to the effect that articles are not dutiable under more general terms when a duty is imposed specifically. Consequently, although limes in brine have passed from "pickles" to "fruits in brine," the treasury decisions which we have cited are all through in point, because they relate to the only question here—whether importations having the peculiarities of that in issue were or should be classified under the general term "limes." Our conclusion is that the importation in issue should be classified as "fruits in brine," in accordance with paragraph 559 of the act of July 24, 1897, c. 11, § 2, Free List, 30 Stat. 198 [U. S. Comp. St. 1901, p. 1683].

The judgment of the Circuit Court is reversed, and the case is remanded to that court, with directions to enter judgment in favor of the petitioner, now the appellant, in accordance with the opinion passed down this day.