**COOMBE, Superintendent of Licenses, et al. v. UNITED STATES ex rel. SELIS.**

(Court of Appeals of District of Columbia. Submitted October 9, 1924. Decided January 5, 1925.)

No. 4184.

1. **Mandamus** ⊚⟞164(3)—**Facts alleged in petition accepted as true on defendant's refusal to answer after overruling of demurrer.**

On defendant's refusal to answer petition for mandamus, on overruling of demurrer thereto, facts alleged in petition stand admitted.

2. **Licenses** ⊚⟞22—**Consent of adjoining property owners not condition to issuance of license to junk dealer.**

Written consent of property owners within 200 feet of junkshop property is not condition to issuance of license on dealer's payment of license tax under Act July 1, 1902, § 7, par. 43, in view of paragraph 27, expressly requiring such consent to operation of certain classes of business.

3. **Statutes** ⊚⟞190—**Scope of unambiguous statute cannot be limited or extended by courts and administrative officials.**

When an enactment clearly expresses the legislative intent, the courts and administrative officials have no right to amend it by limiting or extending its scope.

4. **Statutes** ⊚⟞190—**Unambiguous statute presumed to express full intention of Legislature.**

Enactment couched in plain, unambiguous language is presumed to express the full intention of the Legislature.

5. **District of Columbia** ⊚⟞19—**Regulation prohibiting operation of junkshop without consent of property owners held not within police power.**

Police regulation prohibiting operation of junkshop without written consent of 75 per cent. of property owners within 200 feet of shop *held* not authorized by Joint Resolution Feb. 26, 1892, authorizing enactment of police regulations deemed necessary "for the protection of the lives, limbs, health, comfort, and quiet of all persons and the protection of property."

6. **Licenses** ⊚⟞8(1)—**Statute specifically enumerating classes of business requiring consent of adjoining property owners presumed not applicable to business not enumerated.**

It must be presumed that Congress, having specifically enumerated in Act July 1, 1902, § 7, par. 27, classes of business requiring consent of adjoining owners, did not intend to impose condition on business not enumerated.

7. **Licenses** ⊚⟞37—**Police regulation requiring consent of adjoining owners to operation of junkshop held not to require consent on transfer of business, in view of administrative interpretation.**

Police regulation requiring written consent of adjoining property owners to operation of junkshop *held* to require such permit only when business is first established, and not on transfer of business, in view of administrative practice and official interpretation of regulation for 15 years.

8. **Statutes** ⊚⟞219—**Established administrative practice entitled to great weight in construing doubtful statutes or regulations.**

Established administrative practice shall be given great weight in determining meaning of doubtful statutes or regulations.

9. **Licenses** ⊚⟞37—**Transfer of license, called to licensing officer's attention, notice that assignee has succeeded to assignor's right to have business licensed.**

Transfer of junkshop license, when called to attention of licensing officer, is notice to him that licensee has parted with his right to continue business, and that assignee has succeeded to the right to have the business licensed, and officer is not warranted in denying license to assignee on tender of proper license fee.

Appeal from the Supreme Court of the District of Columbia.

Mandamus by the United States, on the relation of Jacob R. Selis, against Wade H. Coombe, as Superintendent of Licenses for the District of Columbia, and others. From an order overruling a demurrer to the petition and directing issuance of license, defendants appeal. Affirmed.

F. H. Stephens and R. L. Williams, both of Washington, D. C., for appellants.

Milton Strasburger, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from an order overruling appellant's demurrer to a petition for a writ of mandamus and directing the appellant, Wade H. Coombe, superintendent of licenses, to issue to Jacob R. Selis a license to conduct a junk and secondhand business at 1215 K street N. E., Washington, upon payment by Selis of the fees prescribed by law.

[1] The facts as alleged in the petition stand admitted upon demurrer, and must be accepted as true, inasmuch as the appellees declined to make answer to the petition.

The petition discloses that in February, 1908, one Abraham Gerscovitz applied for a license to conduct a junk and secondhand property business on lots 47 and 48 in Square 1002, otherwise known as No. 1215 K street N. E. Upon obtaining the consent of the required number of property owners

in the vicinity of said premises, Gerscovitz's application for a license was granted. Subsequent to the granting of the license, Gerscovitz transferred his business and the license to conduct it to one Bella Weitz, and a license to conduct the business on said premises was duly granted to her in December, 1917, without a new consent from the adjacent property owners.

Bella Weitz transferred the junk and secondhand business and her license to Myer Kline, who secured a license from the proper officials to conduct the business without being required to obtain the consent of the property owners in the vicinity.

In October, 1923, Kline applied for a license to continue his business on said premises during the year 1924, and on that application, after a favorable report from the police department and the fire marshal, a license was duly issued to Kline without the consent of the property owners, and notwithstanding a protest from the Trinidad Citizens' Association.

In December of 1923 Kline formally requested that his license be transferred to Jacob R. Selis, and Selis and Kline joined in an application requesting the superintendent of licenses to issue to Selis a license to conduct a junk and secondhand business on the above-described premises. That application was rejected on the 19th of January, 1924, on the ground that Selis had not obtained the written consent of 75 per cent. of the property owners within 200 feet of the premises. Whereupon Myer Kline paid the license fee of $40 and on his October petition obtained a license to conduct the very same business on the very same premises during the year 1924.

Kline's license for the year 1924 was transferred and assigned to Selis, who requested the superintendent of licenses to issue to him a license for 1924 on Kline's transfer. In the face of the fact that for 15 years it had been the official practice to issue licenses on the original consent of the property owners without exacting a new consent, and notwithstanding that a license had been granted in January, 1924, to Kline without the approval of the property owners, the superintendent of licenses in February, 1924, refused to recognize Kline's transfer of his license to Selis, and denied a license for that year to Selis, on the ground that Selis had not obtained the written consent of 75 per cent. of those owning property within 200 feet of the premises.

Selis was reported by the police department to be a man of good reputation and Kline a man of fair reputation. There was no report by the fire department adverse to the use of the premises by Selis for the sale of junk and secondhand property.

In support of its appeal the government contends, first, that Selis was not entitled to a license until he complied with the police regulations of the District, which prescribe as a prerequisite to the issuance of a license the written consent of 75 per cent. of the property owners within 200 feet of the proposed junkshop; second, that licenses are not transferable, and that therefore Kline's transfer of his license gave to the latter no right to the license.

The licensing of junkshops and secondhand dealers is prescribed by that part of paragraph 43 of section 7 of the Act of July 1, 1902 (32 Stat. 628), which reads as follows:

"Par. 43. That dealers in secondhand * * * property shall pay a license tax of forty dollars per annum. Every person who buys, sells, trades, exchanges, or deals in * * * junk * * * or secondhand personal property of any description shall be regarded as a secondhand dealer."

[2] That act does not require that secondhand dealers seeking a license must first secure the consent of property owners and such consent is not made by the act a prerequisite to the issuance of a license to conduct any business except those mentioned in paragraph 27 (32 Stat. 626). Paragraph 27 does not mention dealers in junk or dealers in secondhand property, and it must therefore be presumed that it was not the intent of the act to withhold from such dealers a license unless the adjacent property owners consented to its issuance.

[3, 4] When an enactment clearly expresses the legislative intent, the courts and administrative officials have no right to amend it by limiting or extending its scope. An enactment couched in plain, unambiguous language is presumed to express the full intention of the Legislature, and to mean nothing more and nothing less than just what it says or *necessarily* implies. Johnson v. Southern Pacific Railway Co., 117 F. 462–465, 54 C. C. A. 508; Thomas v. Winne, 122 F. 395–400, 58 C. C. A. 613. To hold otherwise would simply pave the way for the usurpation of functions which belong exclusively to the legislative department of the government.

[5] No statute that we can find authorizes the superintendent of licenses to demand the written consent of 75 per cent. of the property owners before issuing a license to junk and secondhand property dealers. The right of the superintendent to exact such written consent rests solely on a police regulation of the District, which provides among other things that:

"No quantity of cotton, hay, straw, flax, hemp, husks, rushes, oakum, rags, seaweed, jute, paper, ropes, or other vegetable fiber or wool, hides, or fur when pressed or baled, shall be stored or kept within any building within the District of Columbia, in quantities exceeding ten tons, unless kept in a building of fireproof construction. * * * *No junkshop shall be kept within the District before obtaining the written consent of 75 per cent. of the property owners within 200 feet of where said junkshop or other shop, or store or place is to be located."* Article 2, § 9, Police Regulations. (Italics not quoted.)

It is contended that the power to pass that regulation was conferred on the commissioners by the Joint Resolution of February 26, 1892 (27 Stat. 394, § 2), which authorized the commissioners "to make and enforce all such reasonable and usual police regulations in addition to those already made under the act of January twenty-six, eighteen hundred and eighty-seven, as they may deem necessary *for the protection of lives, limbs, health, comfort and quiet* of all persons and the protection of all property within the District of Columbia." (Italics not quoted.)

That part of the regulation which prescribes that certain materials and commodities when pressed or baled shall not be kept in quantities exceeding 10 tons in any building not of fireproof construction was evidently designed to protect persons and property against fire, and was therefore within the powers granted to the commissioners by the statutory provision just quoted. The licensing provision of the regulation passed in January, 1908, is not a health or police regulation, inasmuch as it does not purport to protect the lives, limbs, health, comfort, quiet, or property of the citizen, and simply permits junk and secondhand dealers to do business on compliance with the condition therein specified. That condition is not prescribed by the statute governing licenses, and was excluded by Congress from the provision for licenses to dealers in junk and secondhand property.

[6] We are of the opinion that the commissioners cannot prescribe a condition for licensing junk and secondhand dealers which Congress did not see fit to impose, and which it expressly required of owners or lessees of shooting galleries, fencing schools, public gymnasiums, places where firearms of any description are used, and schools where the art of self-defense is taught. See paragraph 27. Congress having specifically named the classes of business which were subject to the condition, it must be presumed that there was no legislative intent to impose a condition on any business other than those enumerated. Amy & Co. v. City of Selma (C. C.) 12 F. 414, 415; Irish v. Owen, 98 N. J. Law, 483, 120 A. 184, 185; Thomas v. Winne, supra; Johnson v. Southern Pacific Ry. Co., supra. Apparently, therefore, the commissioners were not vested with power to make the consent of 75 per cent. of the property owners a prequisite to the issuance of license to junk and secondhand dealers. In re Quong Woo (C. C.) 13 F. 229–231, 232, 233.

[7] But, however that may be, it affirmatively appears from the record that after the junk and secondhand property business was first established at 1215 K street N. E., not one of the transferees of the business, except Selis, was required to procure the consent of 75 per cent. of the property owners, and that for about 7 years a license to conduct a junk and secondhand property business at 1215 K street N. E. was issued without exacting that consent. Indeed, after a license had been refused to Selis, it was issued to Kline without requiring such consent, and less than a month later the license was denied to Selis on the sole ground that he had not secured the written consent prescribed by the regulation.

In the light of these facts we are warranted in assuming, in the absence of any showing to the contrary, that it was the established practice of the officials charged with the duty of interpreting the regulation not to require the consent of the property owners, if the original licensee had procured such written consent. That established administrative practice and the official interpretation put upon the regulation should have been respected by the commissioner and by the superintendent of licenses. At all events this court is justified in declining at this late day to disturb either one or the other and in holding that the original interpretation is controlling as to the meaning of the regulation. Brennan v. United States, 136 F. 743, 746, 69

C. C. A. 395; De Forest v. Lawrence, 13 How. 274, 281, 282, 14 L. Ed. 143; Edward's Lessee v. Darby, 25 U. S. (12 Wheat.) 206, 209, 6 L. Ed. 603; Pennoyer v. McConnaughy, 140 U. S. 1, 23, 11 S. Ct. 699, 35 L. Ed. 363; Stuart v. Laird, 1 Cranch. 299, 309, 2 L. Ed. 115; United States v. Midwest Oil Co., 236 U. S. 459, 472, 473, 35 S. Ct. 309, 59 L. Ed. 673.

[8] The rule that established administrative practice shall be given great weight in determining the meaning of doubtful statutes or regulations is a wise one and founded on sound principle. The citizen has a right to rely on long-continued administrative practice and on official interpretations which have long determined the manner and method of executing ambiguous laws and regulations. To hold otherwise would leave the citizen at the mercy of new constructions, endangering his business after he had adjusted himself in good faith to an administrative practice that he had every reason to regard as firmly established.

The regulation is open to two constructions. It might be construed to mean that no annual license would be granted to junk or secondhand dealers unless their *yearly* application was accompanied by the written consent of the property owners. It might also be fairly construed to mean that no junk or secondhand business would be permitted to invade any locality without the written consent of 75 per cent. of the property owners, but that, after the business was once licensed on such written consent, it would be permitted to continue without again requiring the approval of the property owners. The District officials wisely adopted the latter construction, which did not leave the continuance of the business dependent on the annual consent of the property owners, and subjected junk and secondhand dealers to a minimum of inconvenience and annoyance. That construction, having been continued in force for 15 years, resulted in an established administrative practice, which the District officials had no power to change without proper authority.

The consent feature of the regulation produces the impression that it was designed to accomplish some of the purposes of a zoning law. Zoning, however, was not one of the powers conferred on the commissioners by the act upon which the government relies. In re Quong Woo, supra. But, even if that act had granted to the commissioners the power to pass zoning ordinances, that power was curtailed by section 6 of the Zoning Law (41 Stat. 501), subsequently enacted by Congress, which section expressly provided that "any lawful use of a building or premises existing at the time of the adoption of orders and regulations made under the authority of this act may be continued."

As the premises at 1215 K street N. E. were lawfully used for the junk business at the time section 6 was adopted, it is clear that a continuance of that use was permitted, any previous zoning regulation of the commissioners to the contrary notwithstanding.

[9] The transfer of a license, when called to the attention of the licensing officer, is notice to him that the licensee has parted with his right to continue the business, and that the assignee has succeeded to the assignor's right to have the business licensed. Such a transfer certainly does not warrant the denial of a license to the successor in interest, who applies for a license and makes tender of the proper license fee.

The judgment appealed from is affirmed, with costs.