**HECHT CO.   v.   McLAUGHLIN.**

**HECHT CO.**

**v.**

**ELLISON BRONZE CO., Inc.**

**Nos. 11755, 11756.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 2, 1953.

Decided Feb. 25, 1954.

Miller, Circuit Judge, dissented.

out designation for either one or the other use. Each door is so constructed and installed that when pulled open from the outside about one-third of its total width projects inward. Thus, unlike an ordinary door, it does not swing entirely in one direction. There was no evidence of guard rails or bars extending out from the wall where the doors were located to aid in protecting against the inward projection.

There was evidence that this "balanced" type of door, due to less air pressure, facilitates ease of manipulation and accommodates a more rapid flow of people. There was considerable evidence as to the use of these doors in a large number of establishments, and their approval by public authorities in the District of Columbia and the states. There was also evidence that plans for The Hecht Company building, including this type of door and prepared by architects, were examined and approved by public authorities of the District of Columbia before the building permit was issued, and that the doors had been in use for some years without mishap.

Plaintiff testified that as she came toward the doors to leave the store she saw a lady approaching from the outside. Plaintiff sought to walk beyond the door nearest to herself, which she observed was about to be used by the approaching lady, and make her exit through the next one. Before she could do so she was struck by the inward-projecting edge of the door pulled open by the incoming lady.

The Company first contends that the trial court erred in denying its motion for a directed verdict at the close of all the evidence.

We agree with the court below that the evidence above outlined raised an issue of fact for the jury as to whether the Company had exercised reasonable care to prevent injury to its customers. The question was not one of law for the court. On this aspect of the case the factual issue was fairly submitted to the

Mr. Richard W. Galiher, Washington, D. C., with whom Messrs. William E. Stewart, Jr., and Julian H. Reis, Washington, D. C., were on the brief, for appellant.

Mr. John J. Sirica, Washington, D. C., for appellee McLaughlin.

Mr. Lloyd Fletcher, Jr., Washington, D. C., with whom Mr. Paul B. Cromelin, Washington, D. C., was on the brief, for appellee Ellison Bronze Co.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

*No. 11755.* The Hecht Company appeals from a judgment in favor of appellee Julia McLaughlin, plaintiff below, a customer of its department store. She was awarded damages for injuries suffered in circumstances attributed by the jury to the negligence of the Company.

There was evidence the plaintiff in seeking to leave the store came from the Men's Department into a lobby or vestibule from which three doors lead to the street. These doors are used interchangeably for exit and entrance, with-

jury in the court's charge, set forth in the margin.[1]

We think, however, that error occurred in the handling of problems growing out of a building regulation admitted in evidence. The regulation is headed "Aisles and Corridors" and reads in part, "Doors shall not swing into passageways".[2] The court, apparently holding that the regulation applied to the situation presented, instructed the jury that its violation by the Company would be negligence as matter of law. Elsewhere, as we have seen, the court submitted to the jury on the whole evidence the ultimate question of negligence; but if this particular instruction was erroneous, or if evidence material on the question of admissibility of the regulation was excluded, a new trial should be authorized.

Discussing first the question of application and, therefore, of admissibility of the regulation, the Company offered, and the court rejected, testimony of a liaison officer of the District of Columbia Building Department that Article 601–09, entitled "Aisles and Corridors", n. 2, supra, did not apply to the situation before the court. We think this evidence should have been heard. As we have seen, the installation of the door at this place had been approved by the Department of Building Inspection, both before a permit was issued and upon inspection after installation. There was evidence that installations of a similar character had been made in the District of Columbia at Georgetown University Hospital, Woodward & Lothrop's Department Store, Lansburgh's Department Store, the Statler Hotel, and elsewhere. As noted above, the door is not the ordinary type which swings in the usual sense. Uncertainty accordingly arises as to whether for this or any other reason the "Aisles and Corridors" Article applies. In these circumstances the expert or administrative view would be material and helpful. In Wright v. Wardman, 55 App.D.C. 318, 5 F.2d 380, it is held that where the language of an ordinance or regulation is doubtful and open to different interpretations the construction placed upon it by the department charged with its execution will generally control. The court approved this rule in a case turning upon the meaning of zoning regulations having to do with the type of erection which required the consent of adjoining property owners before issuance of a permit. The court said the construction adopted by

---

1. "* * * The question for you to determine is whether a reasonably prudent man would have foreseen that there was a likelihood that customers entering or leaving the store from that entrance might be injured because of the use of such doors in that entrance.

"In determining this question, you may take into consideration not only the particular construction of the individual doors, but their setting, that is, the position of the three outside doors in relation to each other when opening and closing, their relation to the passageway or hall or vestibule into which they opened, their relation to the doors leading from the men's department into the hallway, the path across the hallway which customers might reasonably be expected to follow in entering the store from the street or leaving the store, the signs, or lack of them, on the doors, and any other factor in evidence which might shed light on whether a reasonably prudent man · in the position of The Hecht Company would have or should have anticipated injury to customers by reason of the use of this type of door in this entrance."

2. The complete regulation admitted in evidence, Article 601–09 of the Building Code of the District of Columbia, reads as follows:

"Article 601–09.—Aisles and Corridors

"Safe and continuous passageways or aisles leading directly to every exit and so arranged as to be conveniently accessible to every occupant, shall be maintained at all times.

"Widths of passageways or aisles shall be measured in the clear, at their narrowest points. Doors shall not swing into passageways. The minimum width of any passageways or aisles shall be 3 feet in the clear.

"The aggregate width of passageways or aisles leading to any exit shall be at least equal to the required width of the exit. Where all travel to any exit is along the passageway, such passageway shall have a width suitable for the travel which it may be called on to accommodate."

the authorities should be adhered to. See, also, Coombe v. United States, 55 App.D.C. 190, 3 F.2d 714. An analogy is also found in the reception of expert testimony to aid the court in the interpretation of a city ordinance when some of its language appeared to have a special meaning. City of Chicago v. Holden, 194 Ill. 213, 62 N.E. 550. A further analogy is the use of such testimony in aid of interpreting technical words or phrases in documents. See Seymour v. Osborne, 11 Wall. 516, 546, 78 U.S. 516, 546, 20 L.Ed. 33; Phillips Petroleum Co. v. Payne Oil Corporation, 10 Cir., 146 F.2d 546; 7 Wigmore, Evidence § 1955 (3d ed.). And while the court should interpret an ordinance without the aid of expert testimony when there is no ambiguity, Montgomery Ward & Co. v. Snuggins, 8 Cir., 103 F.2d 458, 460–462, here ambiguity appears.

■ The alternative to holding that the trial court should have received the expert testimony is for us to rule on the present record whether or not the regulation applied and was admissible.[3] This would be unwise without the benefit of available relevant evidence, followed by a ruling by the trial judge after hearing it.

Good practice would indicate that the evidence should be heard out of the presence of the jury, its quantity being held within reasonable limits in the exercise of a sound discretion. The expert or administrative interpretation which might be shown by such evidence is not binding on the court. It is to be received to aid the court in resolving the ambiguity or uncertainty above referred to, and thus in determining whether or not the regulation applies and is admissible.[4]

■ There remains the question whether violation of such a regulation, assuming it has been properly admitted in evidence, constitutes negligence *per se*. This court said in Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370, certiorari denied, 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080, that violation of a safety measure constitutes negligence. That case, however, involved a simple act contrary to the terms of a clear regulation that no person should allow a motor vehicle he operated to stand unattended on any street without having locked the switch. A truck had been left on the street unattended, with the ignition unlocked and the key in the switch. Accordingly, this court applied the general rule that breach of an ordinance intended to promote safety is negligence. This general rule, however, was held inapplicable in the subsequent case of Peigh v. Baltimore & O. R. Co., 92 U.S.App.D.C. 198, 204 F.2d 391. We there characterized the doctrine of negligence *per se* as one to be applied cautiously, with an eye to essential fairness. While it is clear the regulation involved in the present case is a safety measure, there is unequivocal evidence the Company obtained the approval of public and architectural authorities before installing this door at this place. This is indicative of care on the Company's part, quite inconsistent with the theory that violation of the regulation alone, all else aside, is negligence as matter of law. To apply this doctrine to the facts of this case would be essentially unfair.[5] The question of the Company's negligence is to be decided on all relevant evidence, including violation of any safety regulation found to be applicable, and consequently admissible in

---

3. Wright v. Wardman and Coombe v. United States, supra, are illustrative of this course of action.

4. In some such situations the trial court might appropriately permit the question of application, and accordingly that of admissibility, to turn upon jury resolution of disputed factual issues which might arise from the evidence. We do not exclude this method, assuming adequate instructions to guide the jury. It seems to us, however, that the problem in the present case might better be handled as indicated in the body of the opinion.

5. The necessity for caution is emphasized in such a case as this by the close relationship of violation of the regulation, if held to be negligence *per se*, to the proximate cause of the accident.

evidence, but including also facts tending to show due care on the part of the Company in the selection and installation of the door. Had the instruction which the court gave in general terms, see n. 1, supra, been all, we would have no difficulty. But the additional and particular instruction regarding violation of the regulation, which we hold was erroneous, might have been the one relied upon by the jury in finding negligence.

We have considered and find no error as to other questions raised; but the failure to receive expert testimony as to the interpretation, and consequent admissibility and application, of the regulation, and the instruction that its violation would constitute negligence *per se*, require reversal.

*No. 11756.* In No. 11756 The Hecht Company appeals from dismissal, based upon the statute of limitation, of its third-party complaint against the Ellison Bronze Company, Inc., third-party defendant. The complaint of The Hecht Company against the Bronze Company alleges that the latter manufactured, constructed and installed the doors in 1945 and that at the time of the accident they were in the same condition as when installed. The complaint prays that in the event Julia McLaughlin should recover against The Hecht Company it in turn recover from the Bronze Company. This third-party complaint was filed in March, 1951. The installation of the doors in fact occurred about ten years earlier, in 1941.

██ In this court The Hecht Company states that the basis of the third-party action is both breach of warranty and negligence. It is not suggested that there was any express warranty. And there is no breach of an implied warranty because The Hecht Company obtained from the Bronze Company in all respects exactly what it sought. As to

negligence, we do not think the facts made out a case for indemnification of The Hecht Company by the Bronze Company, assuming recovery by McLaughlin against the former; for a jury would not be warranted in finding that, after the doors had been in place at this location for so long a time, with their use and maintenance, and their surroundings, controlled only by The Hecht Company, the injury to McLaughlin could in any proximate sense be attributed to the Bronze Company. Finally, no theory of express contract for indemnification is advanced, or present. So that whether or not any applicable statute of limitation had run,[6] we will not disturb the dismissal of the third-party complaint.

No. 11755 is reversed and remanded.

No. 11756 is affirmed.

WILBUR K. MILLER, Circuit Judge (dissenting).

I do not agree with the statement in the court's opinion that the evidence raised an issue for the jury as to whether The Hecht Company had exercised reasonable care to prevent injury to its customers. Transparent doors of this modern type, even though installed three in a row, do not seem to me to be potentially dangerous so as to require any sort of warning, guard or protection; therefore I do not think the jury should have been permitted to decide the company was negligent in so installing them. My view is that the plaintiff's injury was caused either by her own negligence or by the concurrence of her negligence with that of the other customer who opened the door from the outside and caused it to strike the plaintiff. I would reverse and direct the entry of a judgment in favor of The Hecht Company.

But, if it be assumed that the evidence did raise an issue for the jury, I think the court's disposition of the matter is correct.

---

6. See Pickett v. Aglinsky, 4 Cir., 110 F.2d 628, 630, and Wilcox v. Plummer, 4 Pet. 172, 29 U.S. 172, 7 L.Ed. 821. Compare, Power v. Munger, 8 Cir., 52 F. 705, and Federal Reserve Bank v. Atlanta Trust Co., 5 Cir., 91 F.2d 283, 117 A.L.R. 1160, certiorari denied, 302 U.S. 738, 58 S.Ct. 140, 82 L.Ed. 571.