**Lee NORWOOD, Ann Marie Bishop Norwood, Appellants,**

**v.**

**Mark MARROCCO, et al.**

**No. 84–5416.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1985.

Decided Jan. 7, 1986.

Arthur H. Blitz, with whom Michael A. Gagleard was on brief for appellants.

Keith M. Bonner, with whom Leo A. Roth, Jr. was on brief for appellees.

Before WALD and STARR, Circuit Judges and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

This case arises out of a street brawl in downtown Washington, D.C. in August 1982. The specific question before us is whether a tavernkeeper can be held liable for the tortious conduct of its patron who becomes intoxicated on the premises. The District Court concluded that, by virtue of this court's decision in *Marusa v. District of Columbia*, 484 F.2d 828 (D.C.Cir.1973), an implied cause of action could lie against a tavernkeeper who violates applicable

laws governing the sale of alcoholic beverages in the District of Columbia.[1] 586 F.Supp. 101. The trial court nonetheless granted a motion for directed verdict in favor of the tavernkeeper on the ground that the plaintiff's own conduct constituted contributory negligence as a matter of law, thereby barring recovery entirely against the tavernkeeper. It is from this ruling that the present appeal is taken.

## I

In August 1982, Mark Marrocco and his cousin visited Rumors, a Washington D.C. bar. Having previously consumed several beers at his father's restaurant, Marrocco stepped up the pace at Rumors, consuming three or four vodka tonics in relatively short order.[2] He departed the bar in an admittedly intoxicated state and in what appears from the uncontradicted testimony to have been a rather aggressive frame of mind, concluding his sojourn at Rumors with an unprovoked elbow smash to the chest of an unsuspecting Rumors' doorman.

While Mr. Marrocco was thus occupying himself, the plaintiff, Lee Norwood, was passing the evening in similar fashion elsewhere, resulting in his becoming intoxicated as well. Accompanied by several teammates from the Washington Capitals hockey team, Norwood and friends encountered Marrocco and friends by chance in the early morning hours in the shadows of a hot dog stand near Rumors to which the two parties had independently repaired. Following a volley of insults and exchanges prompted apparently by an unflattering remark about the game of golf and those who play it, Marrocco knocked Norwood

unconscious. With Norwood lying helpless, Marrocco then leaped into the air and landed on the hapless Norwood's face.

This lawsuit followed. In a jury trial, Norwood recovered both compensatory and punitive damages against Marrocco. That has not been appealed and is thus not before us. What remains is Norwood's claim against Rumors under D.C.Code § 25–121 governing the sale of intoxicating beverages. *See supra* note 1. Norwood contends on appeal that, while the District Court was correct in concluding that an implied cause of action under that statute could lie against the tavernkeeper, the trial court erred in holding as a matter of law that Norwood's own state of voluntary intoxication and his conduct in the melee constituted contributory negligence. In contrast to Mr. Norwood's arguments, Rumors maintains that, while the District Court correctly took the case from the jury by virtue of Norwood's own misconduct, no action can lie against it in the first instance, inasmuch as the pertinent provision of the D.C.Code, as interpreted by the Superior Court of the District of Columbia in the post-*Marusa* decision of *Clevenger v. District of Columbia*, Civil No. 2969–76, 106 Daily Wash.Law Rptr. 1561 (1978), does not in fact provide for an implied cause of action against tavernkeepers.

For the reasons that follow, we are constrained to conclude that D.C.Code § 25–121 does not create an implied cause of action in favor of Norwood; we therefore do not reach the correctness *vel non* of the trial court's conclusion that Norwood's claim is barred as a matter of law by his own contributory negligence.

1. The statute provides in pertinent part:
   No person being the holder of a retail license issued pursuant to this chapter shall permit on the licensed premises the consumption of alcoholic beverages, with the exception of beer and light wines, by any person under the age of 21 years, or permit the consumption of beer and light wines by any person under the age of 18 years, or the consumption of any beverage by any intoxicated person, or any person of notoriously intemperate habits, or any person who appears to be intoxicated. No licensee shall be liable to any person for

   damages claimed to arise from refusal to permit the consumption of any beverage on any premises licensed under this chapter.
   D.C.Code § 25–121(b) (1985). Section 25–132 provides for punishment by fine of not more than $1,000 or imprisonment for not longer than one year or both.

2. At the time, Marrocco was 20 years old and thus could not lawfully be served hard liquor under applicable D.C. law. D.C.Code § 25–121(b).

## II

Five years before the District of Columbia courts had occasion to address the issue, this court in *Marusa* directly confronted the question whether a cause of action against a tavernkeeper could properly be implied from the pertinent statute, D.C. Code § 25–121. The *Marusa* court resolved the question affirmatively, concluding that the D.C. statute was designed to promote public safety. Examining the criteria enunciated in this court's earlier decision in *Whetzel v. Jess Fisher Management Co.*, 282 F.2d 943 (D.C.Cir.1960) (setting forth three factors to be evaluated in determining whether violation of a criminal statute can create civil liability), the *Marusa* court reasoned:

> It seems obvious that regulations governing the sale of liquor are intended to enhance public safety; such statutes serve "the well-being of the community" by guarding against "the dangers attending the indiscriminate sale of intoxicating liquors."

484 F.2d at 834. Applying the *Whetzel*-based factors, the court in *Marusa* concluded that the plaintiff there—the victim of a gunshot wound inflicted by an intoxicated off-duty policeman—could properly state a claim against the establishment which had obligingly plied the inebriated officer with liquor.

Confronted with this court's 1973 precedent, the D.C. Superior Court in 1978 addressed the identical issue in *Clevenger* —albeit in the setting such as we have here of the complainant himself having been intoxicated—and reached a contrary conclusion. Examining in detail the history of D.C.Code § 25–121, including its antecedents in the years immediately following the repeal of Prohibition, the *Clevenger* court determined that the Congressional purposes informing the measure did not, upon analysis, encompass public safety. The statute was, rather, licensing legislation aimed at promoting public morality. In the words of *Clevenger*:

> [T]he perceived danger was a threat to public sensibilities and morals occasioned by unregulated proliferation of liquor merchants.... As in the case of national prohibition itself, improved public safety and the prevention of personal injury may be by-products of the [statute] but public sobriety and individual moderation were unquestionably its goals.

106 Wash.L.Rptr. at 1567. Accordingly, the *Clevenger* court concluded that the measure before us was not intended "to be public safety legislation upon which a civil cause of action might be premised." *Id.*

In addressing the case at hand, we thus find ourselves confronted with directly contrary precedents on the dispositive threshold issue of whether Mr. Norwood can invoke D.C.Code § 25–121 in the first instance. Our dilemma is exacerbated by the fact that no resolution of this knotty legal question has been effected by the District of Columbia Court of Appeals. Indeed, we have found no local decisional authority at all since *Clevenger*, nor have the parties brought any pertinent decisions to our attention.

We nonetheless conclude, under the circumstances before us, that it is appropriate to refer to *Clevenger* for authoritative guidance. First and foremost, the matter before us is a matter of the local law of the District of Columbia, as to which the courts of the District of Columbia are the appropriate expositors. The *Marusa* court, in stark contrast to our more happy circumstances, found itself with no teaching at all from the local judiciary, a not surprising state of affairs in those early years in the wake of the landmark court reform legislation of 1970.[3] Second, while we do not by

---

**3.** The District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 476, became effective February 1, 1971.

The *Marusa* court observed that the United States District Court for the District of Columbia had jurisdiction under D.C.Code § 11–501(4), a transitional provision of the Court Reform Act. 484 F.2d at 830 n. 1. The court then held, "[t]hus, we remain responsible for deciding the issues of "local" law that this case raises on the basis of the applicable precedents and with due reference to decisions of the District of Columbia Court of Appeals." *Id.* At the same time,

any means embrace an iron-clad rule that any ruling as to D.C. law by a local court below the District of Columbia Court of Appeals must be rigidly followed regardless of the persuasiveness of its reasoning or the length of time on the books,[4] we have before us in *Clevenger* a careful and thorough opinion, analyzing in detail the language, purposes, and legislative history of the pivotal measure. What is more, that decision is now over seven years old. While we are obviously not bound by *Erie* principles as such to defer to the local court's interpretation, we conclude under this set of circumstances that deferring to a well-reasoned, carefully researched opinion on local law is both appropriate and in keeping with the Congressional purpose reorganizing the judiciary of the District of Columbia.

We therefore hold, consistent with *Clevenger's* teaching, that Mr. Norwood cannot state a cause of action against Rumors under D.C.Code § 25–121.[5] Accordingly, we affirm the judgment of the District Court on that ground, without reaching the more nettlesome question of Norwood's contributory negligence *vel non.*

*Affirmed.*

---

however, this court's transitional jurisdiction over such a case, which conferred the power to decide even issues of local law which then became the law of the case, did not transform the post-February 1, 1971 decisions of this court into binding precedents for the D.C. courts; indeed, such an effect would be inconsistent with the letter as well as the spirit of the Court Reform Act. *See, e.g., U.S. v. Peterson,* 483 F.2d 1222, 1235 n. 85 (D.C.Cir.), *cert. denied,* 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973); *Bethea v. U.S.,* 365 A.2d 64, 70–71 (D.C.1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977); *District of Columbia v. Smith,* 297 A.2d 787, 789 (D.C.1972); *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971); *see also Williams v. W.M.A. Transit Co.,* 472 F.2d 1258, 1266 (D.C. Cir.1972).

4. It is too late in the day to suggest that federal courts, even in situations to which the *Erie* doctrine applies, are required, as Judge Frank so colorfully put it, "to play the role of ventriloquist's dummy to the courts of some particular state," when the decision in question stems from the lower state courts. *Richardson v. C.I.R.,* 126 F.2d 562, 567 (2d Cir.1942). *See, e.g., Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

5. The fact that Marrocco was a minor and, it appears, was unlawfully served liquor in the first instance does not change our analysis. The regulations with respect to sales to minors are contained in the very same section, D.C.Code § 25–121, under which Norwood was proceeding, and thus *Clevenger's* holding as to this provision would stand as a formidable obstacle. But in any event we need not definitively resolve this question since Norwood's entire complaint below was that Marrocco became intoxicated while at Rumors, as opposed to a claim based on the prohibition against sales of liquor—rather than other alcoholic beverages—to minors. *See* Complaint at 4–6 (Aug. 16, 1983).