RONG YAO ZHOU, et al., Appellants,

v.

JENNIFER MALL RESTAURANT,
INC., Appellee.

No. 86–809.

District of Columbia Court of Appeals.

Argued April 7, 1987.
Decided Dec. 4, 1987.

Frederic W. Schwartz, Jr., with whom Robert Cadeaux, Washington, D.C., was on the brief, for appellants.

Richard L. Fritts, with whom Joseph P. Clancy, Chevy Chase, Md., was on the brief, for appellee.

Before PRYOR,* Chief Judge, NEWMAN, Associate Judge, and NEBEKER **, Associate Judge, Retired.

* Hubert B. Pair, *Senior Judge,* was originally a member of this division. Chief Judge Pryor was drawn to replace him pursuant to the Internal Operating Procedures of this court.

NEWMAN, Associate Judge:

In this case of first impression, we are asked to decide whether third parties suffering accidental injuries as the result of the acts of an intoxicated person state a cause of action against a tavern keeper where, as here, they allege (1) that the tavern keeper violated D.C.Code § 25–121(b) (1981) by serving a patron who was, or appeared to be, already intoxicated, and (2) that the statutory violation was a proximate cause of the injuries. We hold, on the basis of those cases in which we have recognized that violation of a statute designed to protect public safety supplies sufficient evidence on which to rest a claim for liability in tort, that Rong Yao Zhou and Xiu Juan Wu have stated a cause of action under District of Columbia law. We, therefore, vacate the order of the trial court granting Jennifer Mall Restaurant's motion for judgment on the pleadings, and remand for trial.

### I.

Assuming as true the allegations as pleaded in the complaint, as we must for purposes of our review of a motion to dismiss for failure to state a claim, *Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359, 364 (D.C.1984); *McBryde v. Amoco Oil Co.,* 404 A.2d 200, 202 (D.C.1979), we are presented with the following set of facts. At approximately 11:30 p.m. on the evening of May 28, 1982, Rong Yao Zhou and Xiu Juan Wu, husband and wife, were seriously injured when they were struck by a car operated by a drunk driver on Connecticut Avenue in Chevy Chase, Maryland. The driver, Peter Joray, was returning from the Brittany Restaurant (trade name of appellee Jennifer Mall Restaurant, Inc.) in Washington, D.C. Employees of the restaurant had unlawfully served alcohol to Joray after he had become intoxicated and after his intoxication had become apparent. It was in this impaired condition that Joray

** Judge Nebeker was an Associate Judge of this court at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1987.

entered his car and drove into Maryland, soon thereafter injuring Zhou and Wu.

On May 9, 1984, Zhou and Wu filed suit in Superior Court seeking 3.5 million dollars in damages from Jennifer Mall Restaurant, Inc. Jennifer Mall Restaurant moved under Super.Ct.Civ.R. 12(b) for judgment on the pleadings for failure to state a claim upon which relief can be granted. Judge Hannon granted the motion without opinion on May 6, 1986.

## II.

We are confronted at the outset by the question of whether to apply District of Columbia law or Maryland law to a personal injury action arising from an accident occurring in Maryland, near the District of Columbia boundary, where the defendant's allegedly negligent conduct occurred in the District of Columbia by a corporation doing business here, and where plaintiffs are District of Columbia residents. We note that the choice of law issue has not been raised by the parties to this suit, who have assumed that District of Columbia law applies. Under Maryland law, a tavern keeper would not be liable in tort under the facts alleged in this case. *See Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981).

██ The District of Columbia has long followed the "governmental interests analysis" approach to choice of law. *Williams v. Williams,* 390 A.2d 4, 5 (D.C. 1978); *Gaither v. Myers,* 131 U.S.App.D.C. 216, 222, 404 F.2d 216, 222 (1968); *Tramontana v. S.A. Empresa de Viacao Area Rio Grandense,* 121 U.S.App.D.C. 338, 341, 350 F.2d 468, 471 (1965), *cert. denied,* 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966). Therefore, it is not the place of the injury that necessarily determines which law is to be applied. Rather, our jurisdiction, and others, *see generally Allstate Insurance Co. v. Hague,* 449 U.S. 302, 314 n.19, 316 n.22, 101 S.Ct. 633, 641 n.19, 642 n.22, 66 L.Ed.2d 521 (1981), have recognized that the place of the injury may be a mere "fortuity" in light of the fact that the relationship of the parties to the litigation is centered elsewhere. *Kaiser-Georgetown Community Health Plan, Inc. v.*

*Stutsman,* 491 A.2d 502, 508 (D.C.1985) (applying District of Columbia law in medical malpractice action arising from medical services performed in Virginia upon Virginia resident, where services were benefit of plaintiff's employment in District of Columbia and defendant was District of Columbia corporation); *Williams v. Rawlings Truck Line, Inc.,* 123 U.S.App.D.C. 121, 125, 357 F.2d 581, 585 (1965). An automobile or other vehicular accident occurring close to the border between two states presents a classic case of such a fortuity. *See Gaither, supra; Allstate, supra,* 449 U.S. at 314 & n.19, 101 S.Ct. at 641 n.19; *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y.2d 34, 211 N.Y.S.2d 133, 134–135, 172 N.E.2d 526, 527 (1961); *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 750–51, 191 N.E.2d 279, 284 (1963); *see also Estrada v. Potomac Electric Power Co.,* 488 A.2d 1359, 1364 (D.C.1985) (contrasting unpredictable situs of injury resulting from lack of due care concerning automobile with fixed situs when negligence involves care of land).

In applying governmental interests analysis to the facts of this case, we consider the interests, respectively, of Maryland and the District of Columbia. From the ruling of Maryland's highest court in *Felder, supra,* we understand that state to adhere to a policy of protecting negligent bar owners from civil liability, although they remain subject to the criminal penalties that attach for serving a person who is "visibly under the influence," MD. ANN. CODE art. 2B, § 118(a) (1957, 1979 Repl. Vol.), *see id.,* 438 A.2d at 498. By contrast, a District of Columbia rule that would make tavern keepers answerable in tort, as well as under the criminal sanctions of D.C.Code § 25–121(b) (1981), would signify interests of this jurisdiction in compensating victims for resulting injuries, as well as in deterring harmful conduct.

██ The apparent clash of policies between Maryland and the District of Columbia presents a "false conflict" in the context of this case. A "false conflict" occurs when the policy of one state would be advanced by application of its law, while that of the other state would not be ad-

vanced by application of its law. In such a situation, the law of the interested jurisdiction prevails. *Kaiser–Georgetown, supra,* 491 A.2d at 509; *Gaither, supra,* 131 U.S. App.D.C. at 224, 404 F.2d at 224. Here, Maryland's interest in protecting tavern owners from tort liability is not implicated where the negligent restaurant is situated in the District of Columbia and the unlawful conduct occurred therein. Hence we apply the law of the interested jurisdiction, the District of Columbia.[1]

■ Should there remain any question whether District of Columbia law applies in this case, *Gaither, supra,* furnishes the answer. *Gaither* is binding precedent[2] that District of Columbia law applies when a cause of action is cognizable under District of Columbia tort law on the basis of a violation within the District of Columbia of a District of Columbia statute or regulation, even though the injury occurs nearby in Maryland where a similar statute has been interpreted by Maryland's highest court as not supporting civil liability. In *Gaither,* the District of Columbia regulation at issue required car owners to remove their keys from their vehicles when leaving them unattended. The negligent conduct occurred in the District of Columbia. The car was subsequently stolen and driven into Maryland, where it struck and injured plaintiff five miles from the District of Columbia border.

Finally, we observe that other jurisdictions that have confronted the question of tavern keeper liability arising in a multi-state context have concluded that "the place where the liquor was unlawfully sold is of greater significance than the location of the accident because, when an intoxicated person is driving, the actual site of the crash is largely fortuitous," *Pardey v. Boulevard Billiard Club,* 518 A.2d 1349, 1352 (R.I.1986), and, accordingly, have applied the rule of liability of the state in which the vendor committed the unlawful act. *See, e.g., Trapp v. 4–10 Investment Corp.,* 424 F.2d 1261, 1265 (8th Cir.1970); *Bankford v. DeRock,* 423 F.Supp. 602, 606 (N.D. Iowa 1976); *Zucker v. Vogt,* 200 F.Supp. 340, 343 (D.Conn.1961), *aff'd,* 329 F.2d 426, 428 n. 2 (2d Cir.1964); *Schmidt v. Driscoll Hotel,* 249 Minn. 376, 82 N.W.2d 365, 368 (1957); *Pardey, supra,* 518 A.2d at 1352–53.

### III.

Having determined that District of Columbia law governs the outcome of this case, we turn now to examine the substantive question of whether Zhou and Wu have stated a cause of action under the law of this jurisdiction. D.C.Code §§ 25–101 to 25–139 (1981), the Alcoholic Beverage Control Act, regulates the sale of liquor in the District of Columbia. Section 25–121(b), in pertinent part, prohibits holders of licenses under § 25–111 from "permit[ing] on the licensed premises ... the consumption of any beverage by any intoxicated person, or any person of notoriously intemperate habits, or any person who appears to be intoxicated...."[3] Violators are subject to fine

1. The only interest of Maryland that is implicated in this litigation, an interest in protecting public safety which we infer from its statutory prohibition on serving persons under the influence, is consistent with rather than in conflict with applying a District of Columbia rule of civil liability.

2. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

3. The Definitions section of the Alcoholic Beverage Control Act provides:
 The words "alcoholic beverage" *or "beverage"* include the 4 varieties of liquor above defined (alcohol, spirits, wine, and beer) and every liquid or solid, patented or not, containing alcohol, spirits, wine, or beer and capable of being consumed by a human being. Any liquid or solid containing more than 1 of the 4 varieties above defined is considered as belonging to that variety which has the higher percentage of alcohol, according to the order in which they are above defined, except as provided in paragraph (3) of this section. The provisions of this section and of this chapter shall not apply to any liquid or solid containing less than one-half of 1 per centum of alcohol by volume, nor shall anything contained in this chapter be construed as affecting the manufacture of apple cider or the sale thereof.
 D.C.Code § 25–103(5) (1981) (emphasis added). As the result of subsequent amendment, § 25–121(b) now reads, in pertinent part, "... consumption of *alcoholic beverages* ... by any intoxicated person, or any person of notoriously intemperate habits, or any person who appears

or imprisonment, pursuant to D.C.Code § 25–132 (1981). We conclude that this statute, while not itself providing a cause of action against tavern keepers by injured third parties, supplies the standard of care by which tavern keepers' conduct is to be measured under the common law. Hence, when a plaintiff alleges that a tavern keeper has violated § 25–121(b), he alleges sufficient evidence of negligence that, when combined with an allegation of proximate causation, states a cause of action under District of Columbia law.

### A.

While the question of tavern keeper liability is one of first impression before this court, it has been considered—in cases not binding upon us—by the Superior Court of the District of Columbia and by the United States Court of Appeals for the District of Columbia Circuit, with inconsistent results. In *Marusa v. District of Columbia*, 157 U.S.App.D.C. 348, 484 F.2d 828 (1973), the D.C. Circuit was presented with a claim against a bar owner by a person shot by an allegedly intoxicated police officer following the officer's consumption of alcoholic beverages at the defendant's establishment. The court concluded that "[i]t is settled law in this court that 'violation of an ordinance intended to promote safety' can give rise to a negligence action." *Id.* at 353, 484 F.2d at 833, citing *Whetzel v. Jess Fisher Management Co.*, 108 U.S.App. D.C. 385, 389, 282 F.2d 943, 947 (1960), and that permitting a cause of action against the tavern keeper would not depart sharply from common law principles. *Id.*, at 355, 484 F.2d at 835. The court had little trouble determining that "it seems obvious that regulations governing the sale of liquor are intended to enhance public safety"; that the statute imposes certain duties on the tavern owner; and that "in light of the purpose of the statute, ... those duties are owed to the community at large ... [including] third parties ... who might come into

contact with inebriated persons." *Id.*, at 354, 484 F.2d at 834 (footnotes omitted).

Five years after the D.C. Circuit's decision in *Marusa*, the Superior Court of the District of Columbia (Hannon, J.) considered the civil liability of tavern owners in the context of a somewhat different pattern of events. In *Clevenger v. District of Columbia*, 106 Daily Wash.L.Rptr. 1561 (D.C.Super.Ct. July 11, 1978), the plaintiff was an *intoxicated patron* who sought to recover from the restaurant's owner for injuries allegedly incurred at the hands of police who had been called by the tavern keeper for assistance in removing the plaintiff from his premises.

Judge Hannon addressed the *Clevenger* case as if it raised two entirely separate questions: could plaintiff state a claim of negligence under the common law, or, alternatively, could he avail himself of an "implied cause of action" under D.C.Code § 25–121. He rejected Clevenger's complaint on both grounds. As for the common law ground, Judge Hannon concluded that "the concepts of proximate cause and reasonable forseeability become severely strained when ... the claimed injuries result from independent, intentional torts of third parties allegedly provoked by plaintiff's intoxication." *Id.* at 1565. As for the implied statutory claim, he drew two conclusions. First, he determined that the Alcoholic Beverage Control Act reflected a "congressional purpose of promoting morality and protecting public sensibilities" rather than of protecting public safety, which he believed was necessary to imply a cause of action under the statute. *Id.* at 1566. Second, in Judge Hannon's view, even assuming a statutory purpose of protecting public safety, the plaintiff in *Clevenger* was not among the class of persons that the statutory provision sought to protect, since Congress did not "evidence any intention to protect the safety of individuals who voluntarily drink to excess." *Id.* at 1567.

---

to be intoxicated." D.C.Code § 25–121 (1987 Supp.) (emphasis added).

D.C.Code § 25–121(b) (1981) also prohibits sale of alcoholic beverages to minors. Violation

of that provision of § 25–121(b) has not been alleged in this case.

The question of tavern keeper liability revisited the D.C. Circuit in 1986. In *Norwood v. Marrocco*, 251 U.S.App.D.C. 2, 780 F.2d 110 (1986), the court effectively overruled *Marusa*, relying on the Superior Court's intervening *Clevenger* decision. Factually, *Norwood* was an amalgam of *Marusa* and *Clevenger*. As in *Marusa*, the plaintiff was a third party claiming damages for assault by an intoxicated patron of defendant's restaurant. However, as in *Clevenger*, plaintiff himself was intoxicated, although as the result of drinks served elsewhere.

The D.C. Circuit in *Norwood* focused exclusively on whether an "implied cause of action" could be found under D.C.Code § 25–121, and—concluding that it was "appropriate to refer to *Clevenger* for authoritative guidance" on the law of the District of Columbia—answered that question in the negative, 251 U.S.App.D.C. at 4–5, 780 F.2d at 112–13. Hence, *Norwood* ignored the question of whether the plaintiff had stated a negligence cause of action under common law principles.

**B.**

We reject the approach taken by *Norwood* and *Clevenger*, which, we believe, inappropriately isolates from the question of common law liability the significance of § 25–121(b) of the Alcoholic Beverage Control Act. By asking, with respect to that Act, only whether it creates an "implied cause of action," those cases ignore a fundamental principle of our common law and misapply theories that allocate roles between courts and legislatures. We endorse instead the view taken in *Marusa*. That view rests upon a long established principle of tort liability in the District of Columbia and one entirely consistent with the role of courts in giving content to the common law.

As we stated in *Ceco Corp. v. Coleman*, 441 A.2d 940 (D.C.1982):

> The "general rule" in this jurisdiction is that "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law."

*Id.* at 945, quoting *Richardson v. Gregory*, 108 U.S.App.D.C. 263, 266, 281 F.2d 626, 629 (1960) (added emphasis deleted). Hence, "[o]ccasionally ... legislative action fashions applicable standards of conduct which themselves fix the duty of care required[;] [f]ailure to meet these community standards stamps the offender 'negligent,' *i.e.* failing to exercise that degree of care necessary in the particular situation." *Richardson, supra*, 108 U.S.App.D.C. at 266, 281 F.2d at 629. *See also* RESTATEMENT (SECOND) OF TORTS § 285 comment c at 21 (1965) ("Even where a legislative enactment contains no express provision that its violation shall result in tort liability, and no implication to that effect, the court may, and in certain types of cases customarily will, adopt the requirements of the enactment as the standard of conduct necessary to avoid liability for negligence."); W. Keeton, D. Dobbs, R. Keeton, D. Owen, PROSSER & KEETON ON THE LAW OF TORTS § 36 at 220 (5th ed. 1984).

The rule that "[v]iolation of an ordinance intended to promote safety is negligence," *Ross v. Hartman*, 78 U.S.App.D.C. 217, 218, 139 F.2d 14, 15 (1943), *cert. denied*, 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944), is rooted in the principle that failure to comply with a statutory requirement designed to protect public safety "is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform," *Martin v. Herzog*, 228 N.Y. 164, 168, 126 N.E. 814, 815 (1920) (Cardozo, J.). Hence, this "axiom of tort law ... recognizes that the continued vitality of the common law, including the law of torts, depends upon its ability to reflect contemporary community values and ethics." *Whetzel, supra*, 108 U.S.App. D.C. at 388, 282 F.2d at 946.

█ Incorporating into the common law a standard of care set by a legislative enactment is distinct from determining that a cause of action arises, by implication, under a statute. The latter task is a matter of

statutory construction, requiring the court to determine whether the legislature intended something other than that which it provided expressly. *Cannon v. University of Chicago,* 441 U.S. 677, 688, 694, 99 S.Ct. 1946, 1953, 1956, 60 L.Ed.2d 560 (1979). Courts appropriately refrain from making such inferences except under certain narrowly defined circumstances. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975) (standards for implying private causes of action under federal statutes). By contrast, the decision to adopt from a penal statute a standard of care to be applied in determining common law negligence is "purely a judicial one, for the court to make." RESTATEMENT, *supra,* § 286 comment d at 26; *Ontiveros v. Borak,* 136 Ariz. 500, 510 & n. 3, 667 P.2d 200, 210 & n. 3 (1983) (en banc). Defining the contours of common law liability, including the duty that may have been breached in a negligence case, is a task traditionally within the purview of the judicial branch. *Kelly v. Gwinnell,* 96 N.J. 538, 552–53, 555–57, 476 A.2d 1219, 1226, 1228 (1984); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314–15 (Tex.1987).

Our courts have recognized that a variety of statutes have a public safety purpose justifying the application of the rule that their violation constitutes negligence. In *Ross, supra,* and *Gaither, supra,* this jurisdiction held that violation of an ordinance prohibiting vehicle owners from leaving their automobiles unattended with the key in the ignition constituted negligence *per se* in a personal injury action against the car owner by a third party injured by the stolen vehicle following its theft. In the court's view, "[t]he evident purpose of requiring motor vehicles to be locked is not to prevent theft for the sake of owners or the police, but to promote the safety of the public in the streets." *Ross, supra,* 78 U.S.App.D.C. at 218, 139 F.2d at 15. Similar conclusions have been drawn with respect to building codes, *see H.R.H. Construction Co. v. Conroy,* 134 U.S.App.D.C. 7, 9, 411 F.2d 722, 724 (1969) (injury to construction worker); *Elliott v. Michael James, Inc.,* 182 U.S.App.D.C. 138, 143, 559 F.2d 759, 764 (1977) (stabbing of restaurant employee; escape prevented because doors unlawfully locked on inside); industrial safety board regulations, *see Bowman v. Redding & Co.,* 145 U.S.App.D.C. 294, 301–02, 449 F.2d 956, 963–64 (1971); traffic regulations, *see Leiken v. Wilson,* 445 A.2d 993, 1002 (D.C.1982); *Bauman v. Sragow,* 308 A.2d 243, 244 (D.C.1973); *Danzansky v. Zimbolist,* 70 App.D.C. 234, 236, 105 F.2d 457, 459 (1939); housing codes, *see Whetzel, supra,* 108 U.S.App.D.C. at 392, 282 F.2d at 950 (injury to tenant by falling ceiling; landlord's violation of code by renting habitation not "in repair" sufficient to send claim of negligence to jury); and the statute making it criminal for a police officer to use excessive force, *see District of Columbia v. White,* 442 A.2d 159, 163–64 (D.C.1982) (violation supports claim of negligence in wrongful death action).

■ In addition, even where the court does not preceive a public safety purpose in the legislative enactment, the statutory violation may be admitted as evidence of negligence, although it does not constitute negligence *per se. Stevens v. Hall,* 391 A.2d 792, 795–96 (D.C.1978); *Whetzel, supra,* 108 U.S.App.D.C. at 389, 282 F.2d at 947; *Peigh v. Baltimore & Ohio R. Co.,* 92 U.S.App.D.C. 198, 200–01, 204 F.2d 391, 393–94 (1953). *Compare* Standardized Civil Jury Instructions for the District of Columbia, No. 5–8 (1981) ("If you find that a regulation ... *intended to protect the public* has been violated and thereby caused injuries which the regulation ... intended to avoid, you *must find negligence....*") (emphasis added) *with* No. 5–9 ("The violation of a regulation ..., which is a cause of a plaintiff's ... injuries is *evidence of negligence* ... to be considered by you.") (emphasis added). Finally, where the statute has a public safety purpose, but the defendant has put forth evidence excusing its violation, that violation may also be considered evidence of negligence rather than negligence *per se. Leiken, supra,* 445 A.2d at 1002–03; *Ceco, supra,* 441 A.2d at 945; *Hecht Co. v. McLaughlin,* 93 U.S.App.D.C. 382, 385–86, 214 F.2d 212, 215–16 (1954) (although department store door arguably was in viola-

tion of building code, its installation had been approved by Department of Building Inspection).[4]

## C.

We have no difficulty concluding that § 25–121(b) of the Alcoholic Beverage Control Act has a public safety purpose, and that its unexcused violation therefore constitutes negligence *per se*, *i.e.*, breach of the duty of care that tavern keepers owe to the public. Thus, when members of the public allege, as plaintiffs have here, that the tavern keeper's negligence was the legal cause of their injuries, they state a cause of action under District of Columbia law.

In *Clevenger*, Judge Hannon, in considering the implied statutory claim, concluded that § 25–121(b) did not have a public safety purpose, but rather a "purpose of promoting morality and protecting public sensibilities." 106 Daily Wash.L.Rptr. at 1566. We believe that this view is shortsighted, at best. For even if the legislation may be accurately regarded in some respects as post-Prohibition "morals" legislation—designd to contain that which Prohibition had failed in attempting to ban altogether—, the "moral" imperative to control the distribution and consumption of alcohol cannot be said to have existed separate and apart from a recognition that excessive consumption presents serious threats to public safety.

Congress in 1934 clearly was aware of the public safety hazards associated with alcohol abuse, and incorporated safety concerns as an integral part of its comprehensive scheme to regulate the sale and use of alcohol in the nation's capital. Senator Sheppard, who supported Prohibition, and opposed the legislation regulating the reintroduction of alcohol in the District of Columbia, was certain that among the many evils associated with the substance was that it "multiplies the hazards on our streets and highways, imperiling the lives of motorists, pedestrians, and little children." 78 CONG.REC. 698 (1934). A majority of the Congress apparently shared Senator Sheppard's safety concern, when, in enacting the Alcoholic Beverage Control Act, it included, alongside § 25–121(b), § 25–127 which prohibits the operation of a locomotive, streetcar, elevator, watercraft, or horse-drawn vehicle by an intoxicated person. 48 Stat. 333, ch. 4 (1934). Section 25–127, by its terms, also left intact another pre-existing statute, 46 Stat. 1428 ch. 317 (1931), now codified at § 40–716, prohibiting driving of motor vehicles while intoxicated.

Congress understood that it was regulating a dangerous substance, and that the potential for injury and accident associated with intoxication is amplified when the intoxicated person is placed at the controls of a mechanical device, particularly one involved in transportation. When, as alleged in this case, an intoxicated customer who has been served liquor in violation of the Alcoholic Beverage Control Act crashes his car shortly after departing from defendant's establishment, injuring third parties, we believe that a harm has occurred which § 25–121(b) was designed to prevent and that the doctrine of negligence *per se* should apply.[5]

---

**4.** Under both of the above circumstances, i.e., where injury results from violation of a statute not having a safety purpose, or where injury results from an excusable violation of a safety statute, the rule of negligence *per se* is not applicable because it cannot be said that the statutory violation has frustrated the statutory purpose. *See Leiken, supra*, 445 A.2d at 1002–03; *Gorris v. Scott*, L.R. 9 Ex. 125 (1874) ("the damage is of such a nature as was not contemplated at all by the statute"; livestock swept overboard in storm after carrier failed to place animals in pens as required to prevent spread of disease), quoted in PROSSER & KEETON, *supra*, § 36 at 225.

**5.** Since 1934, the evidence, of course, has mounted of the hazards associated with combining drinking and driving. *See, e.g.,* H.R. REP. No. 867, 97th Cong., 2d Sess. 7, *reprinted in* 1982 U.S. CODE CONG. & ADMIN. NEWS 3367, 3367 (half of all traffic fatalities are alcohol related).

Although the facts before us involve accidental injuries resulting from a motor vehicle accident, a similar analysis would be appropriate

Our view is not mitigated by the proposition that public safety may have been only a *partial* purpose of the legislation. In *District of Columbia v. Nordstrom*, 117 U.S.App.D.C. 165, 327 F.2d 863 (1963), the court held that violation of a traffic regulation prohibiting parking of vehicles on the sidewalk was negligence in a case in which a pedestrian claimed that she was injured when, in stepping off the sidewalk to avoid an unlawfully parked vehicle, she stepped into a hole and fell. The court concluded that "[r]easonably construed the regulation is designed *in part at least* for the safety of pedestrians.... It is reasonable to assume, in the absence of evidence to the contrary, that the framers of the regulation were *aware of the danger* to pedestrians which might result from obstructing a sidewalk and that *one purpose of* the regulation was to prevent such danger." *Id.* at 168, 327 F.2d at 866 (emphasis added).

We think that the same can easily be said of the statutory provision prohibiting tavern keepers from serving alcohol to persons already intoxicated or apparently intoxicated. Liquor control laws frequently have multiple purposes, *District of Columbia v. Gardiner*, 39 App.D.C. 389, 393 (1912); *Ontiveros, supra,* 667 P.2d at 211; *Largo Corp. v. Crespin,* 727 P.2d 1098, 1108 (Colo.1986) (en banc), and our courts have held that "a liberal and reasonable construction shall be given these statutes in view of their remedial objects and purposes so as to effect the[se purposes]," *Gardiner, supra,* 39 App.D.C. at 393. The courts of other jurisdictions, examining prohibitions nearly identical to § 25–121(b), have concluded that such an enactment "unquestionably reflects a legislative concern for the clear dangers surrounding the sale or provision of alcohol to those who cannot safely consume it," *Largo, supra,* 727 P.2d at 1108; *see also Thaut v. Finley,* 50 Mich.App. 611, 613, 213 N.W.2d 820, 822 (1973) ("it would be absurd indeed to maintain that one of the purposes of the statute in question was not to protect the public from the risk of injury") (statute prohibiting sale of alcohol to minors). Violation of statutes that prohibit sale of alcoholic beverages to intoxicated persons or to minors has been the most common basis upon which courts have found breach of the duty of care that is necessary for imposing tort liability on tavern keepers for resulting injuries.[6]

## IV.

 Accordingly, we hold that the unexcused violation by a tavern keeper of D.C. Code § 25–121(b) (1981), by serving a person already intoxicated or apparently intoxicated, renders the tavern keeper negligent *per se,* and that where injuries are proximately caused to a member of the public by that violation the tavern keeper may be liable in damages. We reverse the trial court's order granting Jennifer Mall Restaurant's motion for judgment on the pleadings, and we remand for trial.

for other types of accidental injuries associated with the excessive consumption of alcohol.

6. *See, e.g., Nazareno v. Urie,* 638 P.2d 671, 675–76 (Alaska 1981); *Ontiveros, supra,* 667 P.2d at 209–11; *Largo, supra,* 727 P.2d at 1108–09; *Davis v. Shiappacossee,* 155 So.2d 365, 367 (Fla. 1963); *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533, 539 (1980); *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847, 850–51 (1966); *Lewis v. State,* 256 N.W.2d 181, 187–89 (Iowa 1977); *Pike v. George,* 434 S.W.2d 626, 627–28 (Ky.1968); *Klingerman v. SOL Corp. of Maine,* 505 A.2d 474, 478 (Maine 1986); *Adamian v. Three Sons, Inc.,* 353 Mass. 498, 233 N.E.2d 18, 19 (1968); *Thaut, supra,* 213 N.W.2d at 821–22; *Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618, 625–26 (1973); *Munford, Inc. v. Peterson,* 368 So.2d 213, 217 (Miss.1979); *Nehring v. LaCounte,* 712

P.2d 1329, 1334 (Mont.1986); *Ramsey v. Anctil,* 106 N.H. 375, 211 A.2d 900, 901 (1965); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 8–9 (1959); *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269, 1275 (1982); *Berkeley v. Park,* 47 Misc.2d 381, 262 N.Y.S.2d 290, 293 (Sup.Ct.1965); *Hutchens v. Hankins,* 63 N.C.App. 1, 303 S.E.2d 584, 592–94, *rev. denied,* 309 N.C. 191, 305 S.E. 2d 734 (1983); *Davis v. Billy's Con–Teena, Inc.,* 284 Or. 351, 587 P.2d 75, 76–78 (1978) (in banc); *Christiansen v. Campbell,* 285 S.C. 164, 328 S.E. 2d 351, 354 (Ct.App.1985); *Walz v. City of Hudson,* 327 N.W.2d 120, 122–23 (S.D.1982); *Mitchell v. Ketner,* 54 Tenn.App. 656, 393 S.W.2d 755, 757 (1964); *El Chico, supra,* 732 S.W.2d at 312– 13; *Young v. Caravan Corp.,* 99 Wash.2d 655, 663 P.2d 834, 837 (1983) (en banc); *McClellan v. Tottenhoff,* 666 P.2d 408, 413 (Wyo.1983).

■ In remanding, we caution that our holding leaves a number of issues open for proof at trial. *See generally Gaither, supra,* 131 U.S.App.D.C. at 221 n. 16, 404 F.2d at 221 n. 16. First, the jury must surmount the threshold question of whether, in fact, the statute has been violated. *Stevens, supra,* 391 A.2d at 796 n. 2; *Bauman, supra,* 308 A.2d at 244. The defendant in turn may present evidence as to whether the violation was excusable under the circumstances or whether other acts of due care negate the negligence implied by the statutory violation. *Gaither, supra,* 131 U.S.App.D.C. at 221 n. 16, 404 F.2d at 221 n. 16; *Hecht Co., supra,* 93 U.S.App.D.C. at 384–86, 214 F.2d at 214–16.

In addition, plaintiffs must prove that the statutory violation was the proximate cause of their injuries. Although in *Ross, supra,* the circuit court held that "[b]oth negligence and causation are too clear in this case ... for submission to a jury," 78 U.S.App.D.C. at 218–19, 139 F.2d at 15–16, other cases have emphasized that causation is a matter for proof, *see Ceco, supra,* 441 A.2d at 945; *H.R.H., supra,* 134 U.S.App. D.C. at 9, 411 F.2d at 724; *Gaither, supra,* 131 U.S.App.D.C. at 221 n. 16, 404 F.2d at 221 n. 16; *Richardson, supra,* 108 U.S. App.D.C. at 266–67, 281 F.2d at 629–30; *see also Casey v. Corson & Gruman Co.,* 95 U.S.App.D.C. 178, 179, 221 F.2d 51, 52 (1955) (key-in-ignition ordinance; negligence was "too remote from the collision in time, place and circumstances to be a proximate cause of plaintiffs' injuries," where accident occurred fifteen miles south of Petersburg, Virginia, many hours after the statutory violation occurred in the District of Columbia). In applying the doctrine of negligence *per se* and holding that plaintiffs have stated a cause of action upon which relief may be granted, we necessarily hold that plaintiffs have alleged an inju-

ry of the general type that the statute was intended to prevent, *i.e.,* accidental injury to members of the public. To prevail at trial, however, plaintiffs must show that they, in fact, suffered such an injury and prove its proximity in "time, place and circumstances," *id.,* to the alleged statutory violation.

■ As a final caveat we note that, in considering the issue of proximate causation, the jury is *not* free to find that the customer's consumption of the alcohol was an intervening cause of the harm to plaintiff, thereby negativing proximate cause as it relates to the tavern keeper's furnishing of the drinks. To permit such a conclusion would be to give force to the very argument that the rule of negligence *per se* is designed to preempt. The essence of that rule is that "the conduct of the defendant or his agent was negligent precisely because it created a risk that a third person would act improperly. In such circumstances, the fact that a third person does act improperly is not an intelligible reason for excusing the defendant." *Ross, supra,* 78 U.S.App.D.C. at 219, 139 F.2d at 16; *accord, Gaither, supra,* 131 U.S.App.D.C. at 221, 404 F.2d at 221; *see also Ceco, supra,* 441 A.2d at 944 ("The negligent act of a third party will operate as a superseding cause of the plaintiff's harm only where the original actor should not have anticipated that act."). It is our view that "[t]he rule we are adopting tends to make the streets safer by discouraging the hazardous conduct which the ordinance forbids. It puts the burden of the risk ... upon those who create it." *Ross, supra,* 78 U.S.App.D.C. at 219, 139 F.2d at 16.[7]

*Reversed and remanded.*

NEBEKER, Associate Judge, Retired:

I dissent for two reasons. To an extent they are related, for in the end each dictates abstention by this court.

---

**7.** The dissent suggests that by our holding today we step upon a slippery slope, heading inexorably toward judicial recognition of social host liability in this jurisdiction. Like all slippery slope arguments, this one is fallacious because it presumes that courts are unable or unwilling to make the kinds of reasoned distinctions that it is precisely in the nature of courts to make.

Some courts, in fact, have made a distinction that the dissent assumes will not be made, refusing to hold a social host or other non-licensee liable, although bound by precedent to recognize liability for the same acts had the defendant been a tavern keeper. *See, e.g., Keckonen v. Robles,* 146 Ariz. 268, 705 P.2d 945 (Ct.App.1985) (distinguishing *Ontiveros, supra* ); *Boutwell v.*

When one examines the basis for the majority holding, it, simply stated, is that the criminal proscription against permitting a drunk person (or one apparently so), from consuming an alcoholic drink is a bridge to impose a civil duty on an A.B.C. license holder. This is in derogation of ordinary rules respecting intervening or proximate cause.

I do not view the cases relied on by the majority (*ante* at 1274–1275) as requiring us to hold as we do. They are only examples of similar holdings in different contexts, some of which are better reasoned than others, but each representing an individual judicial judgment call. In this case, I would not, being free to choose, follow the course of expanding liability.

The first reason for my unwillingness is that we work a reasonless discrimination between victims of drunk drivers who are injured by one permitted to get drunk, but thereafter not permitted further consumption, and those whose primary malefactors were permitted further consumption of alcohol after becoming intoxicated. In my view, we fail in our obligation to administer justice fairly when we judicially create a cause of action for some innocent third parties by using a statute which operates to exclude others without reason.

My second reason for disagreement is based on the premise that this kind of remedy should be left to the political process. Once we turn the corner on license-holder liability based on D.C.Code § 25–121(b) (1981), we must logically go the next step when the case is presented to us, as it surely will be. The next step is quite simple. Under D.C.Code § 40–716(b) (1986), it is an offense to operate a motor vehicle with a certain level of blood alcohol. When that statute and the aider and abettor statute (D.C. Code § 22–105 (1981) ) are taken together, a license holder, or a social host, who aids another to consume suffi-cient alcohol to become drunk before he drives off in his car, must be held to account under a complaint charging similarly to this one. Section 22–105, *supra*, makes a principal one who aids and abetts the principal offender "[i]n prosecutions for any criminal offense ... whatever the punishment may be." *Id.* These criminal statutes are surely as available as § 25–121(b), *supra*, to form a duty predicate for civil liability. Indeed, I suspect they are better than § 25–121(b), for they lack the baseless distinction between serving one who is drunk and aiding one in getting drunk and then operating a car.

To be sure, this next step at expanding liability would cure my first objection, *viz.*, that we irrationally discriminate against some victims of drunk drivers. It is both reasons which prompt me to abstain from this holding. The political process is far better suited to decide whether and to what extent suppliers of alcohol, which lead to intoxication and injury to innocent third parties, are subject to suit.

If there is even a colorable argument that this question is for the legislature (and I think it is far stronger), then two judges of this court ought not to decide it alone. Surely the en banc court should apply itself to the task of deciding this issue of abstention or deference to the legislative process.

I dissent.

---

Of course, the question of social host liability is not presented by this case and we suggest no view here as to that question.